IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-00817-RBJ

CLEARCAPITAL.COM, INC., California Corporation,

    Plaintiff,

v.

COMPUTERSHARE, INC., a Delaware Corporation,
COMPUTERSHARE PROPERTY SOLUTIONS LLC, a Delaware LLC d/b/a Property
Solutions, Part of the Computershare Group, and
JAMES SMITH, an individual and resident of Colorado,

    Defendants.

## ORDER

Defendant Computershare Property Solutions LLC moves for leave to assert counterclaims against plaintiff ClearCapital.com, Inc and a third-party claim against Duane Andrews. ECF No. 65 (proposed counterclaim at ECF No. 65-1). ClearCapital.com, Inc. opposes the request. ECF No. 73. The motion became ripe upon the filing of Computershare Property Solutions LLC's reply. ECF No. 76. On review of the motion and briefs, the Court GRANTS in part and DENIES in part Computershare Property Solutions LLC's motion.

### I. BACKGROUND

Plaintiff ClearCapital.com, Inc. ("Clear Capital") is a California corporation with its principal place of business in Truckee, California. Clear Capital specializes in real estate asset valuation and collateral risk assessment. *See generally* Complaint, ECF No. 1 at ¶¶1–16. Defendant Computershare, Inc. is the parent company of defendant Computershare Property Solutions, LLC ("Property Solutions"). *Id.* at ¶17. Property Solutions is a Delaware corporation

1

headquartered in Highlands Ranch, Colorado. *Id.* It too provides property valuation products and services. *Id.* at ¶23.

The business dispute between Clear Capital and Property Solutions began in May 2016 when defendant James Smith unexpectedly resigned from his position as Clear Capital's senior vice president for sales and assumed the role of president for competitor Property Solutions.[1] *Id.* at ¶26. Nearly two years later, Clear Capital filed a lengthy complaint on April 6, 2018, alleging the following nine counts against defendants: (1) misappropriation of trade secrets under the Defend Trade Secrets Act against all defendants; (2) misappropriation of trade secrets under Colorado law against all defendants; (3) misappropriation of business value against all defendants; (4) intentional interference with prospective economic or business advantage against all defendants; (5) breach of contract against Mr. Smith; (6) breach of implied covenant of good faith and fair dealing against Mr. Smith; (7) civil conspiracy against all defendants; (8) violation of Computer Fraud and Abuse Act against Mr. Smith; and (9) conversion against Mr. Smith. ECF No. 1 at 23–33.

Property Solutions alleges that, since Clear Capital filed suit, Clear Capital and its CEO, Mr. Andrews, have engaged in a "wide-spread smear campaign against Property Solutions." ECF No. 65-1 at ¶13. Specifically, the counterclaim alleges that Clear Capital and Mr. Andrews used Mr. Smith's deposition and Clear Capital's "false, defamatory, and/or unsubstantiated allegations" in its complaint to contact dozens of businesses in the marketplace—including numerous current and prospective clients of Property Solutions—to disparage Property Solutions. *Id.* at ¶¶13, 15, 17. Because of these communications, the counterclaim alleges that

---

[1] Mr. Smith previously moved to compel arbitration, a motion that Clear Capital opposed. ECF Nos. 34, 35. I granted Mr. Smith's motion after finding that the arbitration agreement that Clear Capital required Mr. Smith sign as a condition of his employment was valid and enforceable. ECF No. 55. Thus, the claims against Mr. Smith were administratively closed per D.C.COLO.LCivR 41.2. *Id.* at 5.

at least two companies subsequently cancelled their business or prospective relationships with Property Solutions.  *Id.* at ¶¶18, 31.

Property Solutions wishes to assert two counterclaims.  The first is a claim of tortious interference with business relations against Clear Capital and Mr. Andrews.  *Id.* at ¶¶25–34.  The alleged spreading of false and defamatory information about Property Solutions form the basis of this claim.  *See id.* at ¶28.  The second claim for relief is an abuse of process claim against Clear Capital.  *Id.* at ¶¶35–42.  To support the second claim, Property Solutions alleges that Clear Capital's real motive for initiating the lawsuit in April 2018 was to seek an unlawful and unfair business advantage over its competitor by parading Clear Capital's allegations as facts throughout the marketplace.  *Id.* at ¶¶36–39.

## II.  STANDARDS OF REVIEW

### A.  <u>Fed. R. Civ. P. 15 – Amended and Supplemental Pleadings</u>.

Rule 15(a)(2) instructs that leave to amend should be freely granted when justice so requires.  This Court freely permits parties to amend their pleadings absent "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  Here, Clear Capital's chief argument is that the counterclaim would be futile.  ECF No. 73 at 4.  The futility question is "functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim."  *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999).

To properly state a claim, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plausible claim is a claim that "allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true. *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

### B. Fed. R. Civ. P. 16 – Pretrial Conferences; Scheduling; Management.

Rule 16(a)(4) provides that a scheduling order may be amended "only for good cause and with the judge's consent." Although the scheduling order defines the boundaries of litigation and assists parties in preparing for trial, the Tenth Circuit has encouraged district judges to remain flexible in allowing amended pleadings. *See Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997).

In this case, the scheduling order set a deadline for joinder of parties and amendment of pleadings of July 16, 2018. ECF No. 32 at 14. I have since modified the scheduling order twice. On February 4, 2019 I granted the parties' joint motion to extend the discovery cut-off from February 4 to February 22. ECF Nos. 64, 66. More recently, I granted the parties' joint motion to extend the deadlines for designating experts and dispositive motions. ECF Nos. 77, 78. Neither motion addressed the deadline for joinder of parties or amendment of pleadings.

### III. ANALYSIS

Property Solutions argues that justice requires permitting it to assert counterclaims and a third-party claim because Property Solutions only learned of Clear Capital's and Mr. Andrews's alleged wrongful conduct on January 11, 2019 when it received supplemental discovery responses from Clear Capital. ECF No. 65 at ¶15. Moreover, Property Solutions argues that

4

Clear Capital and Mr. Andrews will not be prejudiced by the timing of this motion because this Court extended the discovery cut-off to February 22, 2019 (Property Solutions filed its motion on February 1, 2019). *Id.* Clear Capital does not argue that it will be prejudiced despite the ten-day jury trial set to commence on September 16, 2019. Rather, Clear Capital responds to Property Solutions' motion by arguing that both counterclaims are futile because they are subject to dismissal under Rule 12(b)(6). I now turn to the futility of the counterclaims.

### A. **Counterclaim One: Tortious Interference with Business Relations.**

Property Solutions alleges that Clear Capital and Mr. Andrews intentionally interfered with current and prospective business relations when they contacted multiple entities in the mortgage industry in an effort to disparage Property Solutions. ECF No. 65-1 at ¶28. As a result, Property Solutions alleges that at least two entities—Quicken Loans and Prime Lending—ended their business ties with Property Solutions. *Id.* at ¶¶26, 31, 32.

In its response brief, Clear Capital argues that this counterclaim fails the pleading standards of Fed. R. Civ. P. 8. ECF No. 71 at 4–5. Then, Clear Capital argues that the complained of communications by Mr. Andrews were necessary to "maintain customer relationships, avoid dissemination of second-hand information, and to comply with obligations concerning Clear Capital's handing of third-party information." ECF No. 73 at 3–4, 6. However, it is plain to me that Clear Capital misunderstands the allegations in the first counterclaim. On four separate instances, Clear Capital argues in bold and italic font that there is nothing improper with Mr. Andrews speaking with "***Clear Capital customers***" about this lawsuit. *Id.* at 3, 6 (emphasis in response brief). But Property Solutions' primary complaint is that Mr. Andrew contacted Property Solutions' customers, not Clear Capital's customers. *See* ECF No. 65-1 at ¶15–17. Clear Capital goes on to argue that, even if Property Solutions'

5

counterclaim satisfies Rule 8's basic pleading standards, the complained of conduct is protected by both the litigation and competitor privileges. ECF No. 73 at 3.

The claim of tortious interference with business relations requires a plaintiff to show that the defendant intentionally and improperly induced or prevented a third person to not enter into or continue a business relationship with the plaintiff. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995) (citing Restatement (Second) of Torts, § 766B (1979)). I do not agree with Clear Capital's Rule 8 argument. Property Solutions has met the basic pleading standards for this counterclaim. In no uncertain terms, the counterclaim alleges that on December 6, 2018 Mr. Andrews initiated communications with Joanna McGinn from Quicken Loans, an existing costumer of Property Solutions. ECF No. 65-1 at ¶16. The counterclaim further alleges that Mr. Andrews again contacted Ms. McGinn on December 10, and that Andrews admitted in his deposition that he sent emails to Ms. McGinn. *Id.* Following these communications, the counterclaim alleges that Quicken Loans emailed Property Solutions on January 10, 2019 to terminate its existing agreements with Property Solutions. *Id.* at ¶20. According to the counterclaim, the same situation occurred with another Property Solutions costumer, Prime Lending. *Id.* at ¶22. The communications were, according to Property Solutions, improper and made in bad faith. *Id.* at ¶17. This is enough to put Clear Capital on notice of the allegations it faces.

In addition to its Rule 8 argument, Clear Capital raises two defenses. The first is the litigation privilege (sometimes referred to as the litigation shield). ECF No. 73 at 8. This privilege provides that "[a]n attorney's defamatory statements, made in the course of, or in preparation for, judicial proceedings in a filed case cannot be the basis of a claim for intentional interference with a contract or prospective contractual relations if the statements are related to the litigation." *Begley v. Ireson*, 399 P.3d 777, 780 (Colo. App. 2017).

Clear Capital quotes this simple rule in its response brief, but it omits that it is "an attorney's defamatory statements" that are privileged. Instead, Clear Capital argues that it is a "litigant's" defamatory statements that are privileged. ECF No. 73 at 8–9. But this statement of the law is only partially true. As the rule plainly states, it is an *attorney*, not the represented party, who enjoys an absolute privilege for statements made that are related to pending litigation. *Begley*, 399 P.3d at 780.

As much as Clear Capital would like for this privilege to extend to parties, it fails to cite any case which support this argument. The closest case I could find where a Colorado court extended this privilege to a non-attorney is *Buckhannon v. U.S. W. Commc'ns, Inc.*, 928 P.2d 1331 (Colo. App. 1996). In *Buckhannon*, an investigator employed by U.S. West's in-house counsel made defamatory statements to the plaintiff's insurance company during the investigation phase of litigation. *Id.* at 1333. The plaintiff filed suit against U.S. West for these statements. *Id.* at 1334. The Colorado Court of Appeals held that these statements made by "employees in U.S. West's legal department" were absolutely privileged. *Id.* at 1334. Even the *Begley* court, in a parenthetical, characterized the *Buckhannon* holding as "addressing defamatory attorney statements made during trial preparation." *Begley*, 399 P.3d at 780.

Clear Capital has failed to persuade me that these alleged statements by Mr. Andrews are privileged, and none of the cited cases support its theory that this privilege extends to individual litigants. I also note that even if Clear Capital had convinced me that the privilege extends to non-attorneys, Clear Capital has failed to show at this point that the recipients of these communications are "involved in and closely connected with the proceedings," *Club Valencia Homeowners Ass'n, Inc. v. Valencia Assocs.*, 712 P.2d 1024, 1027 (Colo. App. 1985), or that these communications were "integral to the judicial process . . . ." *Patterson v. James*, Nos.

7

16CA2024 & 17CA1154, 2018 WL 6545118, at *3 (Colo. App. Dec. 13, 2018). As such, Clear Capital's first defense—the litigation shield—fails.

The second defense raised by Clear Capital is the competitor privilege doctrine. ECF No. 73 at 9. The competitor privilege doctrine comes from § 768(1) of the Restatement (Second) of Torts (1979), which the Colorado Supreme Court endorsed in *Mem'l Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*, 690 P.2d 207, 210–11 (Colo. 1984). The doctrine provides that generally a plaintiff cannot sue its competitor for intentionally interfering with prospective contractual relations. *Id.* This privilege provides the most protection for "contracts terminable at will because an interference with a contract terminable at will is an interference with a future expectancy, not a legal right." *Id.* at 211. However, the competitor cannot employ "wrongful means" when it intentionally interferes with prospective economic opportunities. Restatement (Second) of Tort § 768(1)(b) (1979).

According to Clear Capital, this privilege applies because the contracts at issue in the counterclaim were either prospective or terminable at will. ECF No. 73 at 9. Property Solutions doesn't dispute the structure of the contracts at issue,[2] but instead it argues that Clear Capital and Mr. Andrews employed wrongful means to intentionally interfere with Property Solutions' contracts. ECF No. 76 at 7. Specifically, the wrongful means alleged in the counterclaim is that Clear Capital spread false or defamatory information about Property Solutions to Property Solutions' customers. *See* ECF No. 65-1 at ¶¶16-18, 30.

I find that Property Solutions has met its burden of pleading that Clear Capital employed wrongful means when competing with Property Solutions. A court in this district has ruled that

---

[2] The specific nature and structure of the contracts is not entirely clear. However, Property Solutions alleges that "[w]hile Property Solutions had not yet performed any work for Quicken Loans, Property Solutions and Quicken Loans recently entered into both an Independent Contractor Agreement (January 19, 2018) and a Work Order agreement (August 20, 2018) so that Property Solutions could serve as a vendor to Quicken Loans." ECF No. 65-1 at ¶19.

"[d]efamation with actual malice . . . would certainly qualify as 'wrongful.'" *Wedbush Morgan Sec., Inc. v. Kirkpatrick Pettis Capital Mgmt., Inc.*, No. 06-CV-00510-WDM-BNB, 2007 WL 1097872, at *8 (D. Colo. Apr. 9, 2007) (citing *Amoco Oil Co.*, 908 P.2d at 502 n.6).[3] I agree. Thus, Property Solutions will be required to prove at trial that the complained of statements were defamatory or disparaging to prevail on its claim.

In sum, taken the well-pled allegations as true, I find that Property Solutions has adequately pled a claim for tortious interference with business relations, and that good cause exists to allow Property Solutions to assert this counterclaim. Accordingly, Property Solutions may proceed on this counterclaim against Clear Capital.

### B. Tort Claim Against Duane Andrews in His Individual Capacity.

Property Solutions asserts the claim of tortious interference with business relations against Mr. Andrews. Clear Capital argues that the counterclaim makes no factual assertions against him because the alleged tortious acts were carried out solely in Mr. Andrews's capacity as an officer of Clear Capital. ECF No. 73 at 12. Clear Capital states that "an officer of a corporation cannot be held personally liable for a corporation's tort solely by reason of his or her official capacity." *Id.* (quoting *Hoang v. Arbess*, 80 P.3d 863, 867 (Colo. App. 2003)). Clear Capital goes on to cite language concerning circumstances where courts disregard corporate form. *Id.*

---

[3] Clear Capital makes a colorful argument when it suggests that the meaning of "wrongful means" in § 768(1)(b) is limited to physical violence, fraud, unlawful civil suits, and criminal violations. ECF No. 73 at 10. The basis of this argument is found in comment (e) of § 768 in which the drafters stated, "[t]he predatory means discussed in § 767, Comment c, physical violence, fraud, civil suits and criminal prosecutions, are all wrongful in the situation covered by this Section." Restatement (Second) of Torts § 768 cmt. e (1979). The Colorado Supreme Court addressed this issue in *Amoco Oil Co.* when it parroted similar language. 908 P.2d at 502. However, in a footnote, the Colorado Supreme Court noted that "[o]ther jurisdictions recognize the limited definition of wrongful means," such as defamation and disparaging falsehood. *Id.* at 502 n.6 (citing *Downey Chiropractic Clinic v. Nampa Rest. Corp.*, 900 P.2d 191, 194 (Idaho 1995)). Because the Colorado Supreme Court favorably cited *Downey*, I presume, like the W*edbush Morgan* court, that defamation and disparaging falsehoods fall under the umbrella of wrongful means.

It is evident that Clear Capital misstates the law and mistakes the nature of this counterclaim. To start, Clear Capital takes the above statement of law out of context and cherry-picked the portion of the sentence that supports its position. The entire sentence from *Hoang* reads as follows: "While an officer of a corporation cannot be held personally liable for a corporation's tort solely by reason of his or her official capacity, an officer may be held personally liable for his or her individual acts of negligence even though committed on behalf of the corporation, which is also held liable." *Hoang*, 80 P.3d at 867 (citing *Snowden v. Taggart*, 17 P.2d 305, 307 (Colo. 1932)). As the Colorado Supreme Court recognized in *Swowden*, "[t]o permit an agent of a corporation, in carrying on its business, to inflict wrong and injuries upon others, and then shield himself from liability behind his vicarious character, would often both sanction and encourage the perpetration of flagrant and wanton injuries by agents of insolvent and irresponsible corporations." 17 P.2d at 307. Here, Property Solutions asserts that Mr. Andrews engaged in tortious conduct in his individual capacity by directly spreading false and defamatory information about Property Solutions. Colorado law allows Property Solutions to assert a tort claim against Mr. Andrews in his individual capacity, even if he was acting as an officer of a corporation, so long as he personally participated in the alleged misconduct. *See Hoang*, 80 P.3d at 868. Property Solutions alleges just that.

As to Clear Capital's veil piercing argument, I find that argument irrelevant. Property Solutions is not asking the Court to disregard the corporate form to hold Mr. Andrews liable for Clear Capital's debt. Property Solutions wishes to assert a claim against Mr. Andrews in his individual capacity for torts that he personally committed.

Accordingly, Property Solutions' request to assert a claim for tortious interference with business relations against Mr. Andrews is granted.

## C. Counterclaim Two: Abuse of Process.

In its second proposed counterclaim, Property Solutions alleges an abuse of process claim. An abuse of process claim requires a showing of three elements: (1) that the party filing suit had an ulterior purpose in using the judicial proceeding; (2) that that party engaged in willful action to use the legal proceeding in an improper manner; and (3) resulting damages. *Mackall v. JPMorgan Chase Bank, N.A.*, 356 P.3d 946, 954 (Colo. App. 2014). "[A]n ulterior purpose is one that the legal proceeding was not designed to accomplish." *Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d 62, 66 (Colo. App. 2010) (citing Restatement (Second) of Torts § 682 cmt. b (1979)). However, if the alleged ulterior purpose is simply incidental to the legal proceeding's proper purpose, no claim lies. *Id.*

Like the first counterclaim, Clear Capital argues that Property Solutions fails Rule 8's basic pleading standards for its abuse of process claim because Clear Capital had a legitimate reason for filing suit—Mr. Smith wrongfully retained confidential information owned by Clear Capital. ECF No. 73 at 8. Alternatively, Clear Capital argues that even if it had an ulterior motive, it would be incidental to the suit's proper purpose. *Id.* Property Solutions counters by arguing that Clear Capital and Mr. Andrews engaged in conduct that is distinct and separate from this litigation. ECF No. 76 at 6.

I find that Property Solutions' second counterclaim is futile for two reasons. First, Property Solutions fails to cite any Colorado caselaw to support its argument that an abuse of process claim lies even if the original filing is deemed legitimate. ECF No. 76 at 5–6. Instead, it cites cases from Tennessee, Massachusetts, and the District of Columbia. ECF No. 76 at 5–6. Second, Property Solutions alleges no facts to support the notion that Clear Capital filed its original trade secrets claim improperly or in bad faith. The counterclaim is devoid of any factual allegations that the misappropriation of trade secrets claim was simply a ruse to gain an unfair

business advantage. Put another way, Property Solutions does not allege that Clear Capital invoked this legal proceeding not for its intended purpose, which is to recover on its misappropriation of trade secrets and related claims.

Accordingly, Property Solutions' request to assert an abuse of process claim against Clear Capital is denied.

## ORDER

For the reasons above, Property Solutions' request to assert counterclaims [ECF No. 65] is GRANTED in part and DENIED in part.

DATED this 11th day of April, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge