# EXHIBIT J

Case No. 1:18-cv-00817-DDD-STV   Document 123-10   filed 08/23/19   USDC Colorado   pg 2 of 37

MSC Software Corporation v. Altair Engineering, Inc., Not Reported in Fed. Supp. (2015)

2015 WL 13273227

KeyCite Yellow Flag - Negative Treatment
Supplemented by MSC Software Corporation v. Altair Engineering, Inc., E.D.Mich., November 22, 2015

2015 WL 13273227
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

MSC SOFTWARE CORPORATION, Plaintiff

v.

ALTAIR ENGINEERING, INC., Marc Klinger,
Rajiv Rampalli, and Michael Hoffman, Defendants

Civil Action No. 07-12807
|
Signed 11/09/2015

**Attorneys and Law Firms**

James F. Hermon, Robert H. Ellis, Kelly R. Houk, Dykema Gossett, PLLC, Patrick F. Hickey, Hickey Hauck Bishoff & Jeffers, PLLC, Detroit, MI, Anthony J. Rusciano, Plunkett & Cooney, Bloomfield Hills, MI, Noah S. Hurwitz, Dykema Gossett PLLC, Ann Arbor, MI, for Plaintiff.

Ahmed J. Davis, Fish & Richardson, Washington, DC, Christian J. Garascia, Jeffrey D. Wilson, Michael M. Jacob, Ryan T. McCleary, Young Basile Hanlon & MacFarlane, PC, Troy, MI, Christopher Dillon, Jeffrey A. Shneidman, Whitney Allyse Reichel, Fish & Richardson P.C., Boston, MA, Samantha K. Heraud, C. Thomas Ludden, Phillip E. Seltzer, Lipson, Neilson, Cole, Seltzer & Garin, PC, Bloomfield Hills, MI, for Defendants.

**REPORT AND RECOMMENDATION OF
SPECIAL MASTER ON ALTAIR'S MOTION TO
EXCLUDE TESTIMONY OF RICHARD H. LEE**

Richard D. Grauer, Special Master

**TABLE OF CONTENTS**

*1  I. INTRODUCTION...——
A. Recommendations...——

B. Background...——

C. Applicable Law...——

1. Standards for Review of Expert Testimony...——

2. Damages for Trade Secret Misappropriation...——

   (a) The Requirement of Apportionment...——

   (b) The Entire Market Value Rule...——

II. DISCUSSION...——
A. The Parties' Competing Products...——

B. Lee's Unjust Enrichment Analysis...——

C. Lee's Lump Sum Reasonable Royalty Analysis...——

D. The MSC/Lee Rationale for Non-Apportionment...——

1. The contention that Altair has the burden to apportion damages...——

2. The contention that the Entire Market Value Rule ("EMVR") is not directly applicable to trade secret cases generally, or to the lump sum reasonable royalty theory specifically...——

3. The contention that the three trade secrets created the demand for MotionSolve...——

**I. INTRODUCTION**

Before the Court is Altair's motion *in limine* (Doc. 986) asking the Court to exercise its "gatekeeping" role under Federal Rule of Civil Procedure 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993) to exclude the report and testimony of MSC's damage expert, Richard H. Lee, from trial. The Court referred this motion to me for a Report and Recommendation (Doc. 1010).

**A. Recommendation**
**For the reasons more fully presented below, and subject to possible revision as explained in the next paragraph, I recommend that Altair's Motion to Exclude the Testimony of Richard H. Lee be GRANTED. The bases for this recommendation are my opinion that:**

**(1) he erred in concluding that the facts of the case did not require that he apply the law concerning apportionment of damages to any of his three damage**

2015 WL 13273227

theory methodologies, and therefore his opinions are not "the product of reliable principles and methods" (**Fed. R. Evid. Rule 702**); and

(2) his conclusions that the contribution of the three misappropriated trade secrets to the performance and revenue of MotionSolve entitled MSC to 100 percent of MotionSolve's incremental profits, or to a lump sum reasonable royalty based on the unapportioned value of the entire MotionSolve product, are not "based on sufficient facts or data" (*Id.*).

It is possible that MSC's ongoing approved discovery may yield relevant evidence that may cure the referenced insufficiency and warrant revision of this recommendation. That specific discovery is discussed at page 31, fn.6, *infra.*

### B. Background

This is a business dispute tried to a jury. In April, 2014, a jury found, *inter alia*, that three trade secrets directed to functions of MSC's ADAMS/Solver simulator program were misappropriated by Defendants and included in Altair's simulator program, MotionSolve. On November 13, 2014, the Court set aside the jury's $26,100,000.00 verdict in favor of MSC as excessive and against the great weight of the evidence, and concluded that Altair was entitled to a new trial on the issue of damages for breach of confidentiality/ misappropriation of trade secrets (Doc. 928).

On January 12, 2015, the Court held a status conference to discuss the future course of the case. The Court's resulting Order (Doc. 944) provided in relevant part:

*2 As a benchmark for going forward, each party shall provide to the other the source code for its respective solver as it existed prior to the date the first of the three features was misappropriated. As to each party,

A. MSC's source code must separately identify (highlight) the three features.

B. Altair shall provide its source code as it exists today with each of the three features highlighted. If a feature is not currently in the code, Altair must separately state as to such feature when it was placed in the code and when it was removed.

Altair shall also state how its customers were notified, if they were, that the source code was enhanced with the features that were misappropriated.

\* \* \* \* \*

As to financial information,

A. Both parties shall have discovery with regard to financial information, including sales data.

In the ensuing nine months, substantial discovery has been sought and produced by both parties, numerous discovery disputes and other motions have been presented informally and formally to me and to the Court, and 91 entries added to the docket sheet (bringing the total current number of entries to 1035 since the 2007 filing of this lawsuit).

Pursuant to the Scheduling Order then in effect, MSC filed the expert report of its damages expert, Richard H. Lee, on May 29, 2015.[1] The present motion was filed by Altair on August 21, 2015 (Doc. 986). MSC's Response and Altair's Reply were filed on September 21st (Doc. 1005) and October 8th (Doc. 1029), respectively.

[1]   The Lee Report is voluminous, spanning 107 pages (in what appears to be 11-point type with 1.5 line spacing) plus appendices.

Mr. Lee prepared a "Rebuttal/Supplemental Expert Report," which was served on Altair on August 19, 2015, two days before Altair's *Daubert* motion was filed. The Court ordered that such Report was to be disregarded, as the scheduling orders did not provide for further expert reports (Doc. 985, dated August 21st). Further expert reports require Court approval, for good cause shown. *Id.* Accordingly, Altair's *Daubert* motion did not refer to Mr. Lee's Rebuttal/ Supplemental Report. MSC thereafter filed the required motion for leave to serve three Reports, including the one in question (Doc. 987). That motion was granted, with the added direction that the Reports were to be considered submitted on September 3rd (Order of September 3rd, Doc. 1000).

A Draft of this Report and Recommendation was circulated to the parties for their informal comment on October 26, 2015. Helpful comments were received from both MSC and Altair, and factual corrections or additions have been made were appropriate.

MSC Software Corporation v. Altair Engineering, Inc., Not Reported in Fed. Supp. (2015)

2015 WL 13273227

Mr. Lee's damage calculations are based on an unjust enrichment theory (using two alternative methods of computing Altair's revenue) and on a lump-sum reasonable royalty theory. Altair's present *in limine* motion challenges his report as based on unreliable and speculative damages theories that are unsupported by the evidence and lack any foundation in accepted scientific principles. Among several independent grounds for challenge of the three theories, Altair contends that all three of Mr. Lee's calculation methods fail to apportion the damages to the contribution made by three trade secrets, as required by the law applicable to the facts of this misappropriation. I have concluded that Altair's non-apportionment challenge is meritorious as to all three damage theories and methodologies, and therefore fully dispositive of Altair's motion in its favor. I therefore have not undertaken the evaluation of the other challenge grounds, which are more factually dense and subject to potential factual disputes that might make exclusion on those challenge grounds inappropriate.

## C. Applicable Law

### 1. Standards for Review of Expert Testimony

**\*3** A qualified expert may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

The Rule requires the district court to act as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). That standard applies not only to scientific testimony but to all expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). The reliability inquiry is a flexible one; "whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153.

"*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010) *aff'd* 131 S.Ct. 2238 (2011). "When the methodology is sound ... disputes about the degree of relevance or accuracy may go to the testimony's weight, but not its admissibility." *Id.*

at 852. "Perceived flaws in an expert's opinion go to weight only if they fall within the accepted norms of the discipline and have a non-speculative basis in fact." *Multimatic, Inc. v. Faurecia Interior Systems, USA, Inc.*, 358 Fed. Appx. 643, 654 (6th Cir. 2009). When parties take different approaches, "the relative strengths and weaknesses may be exposed at trial or attacked during cross-examination." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014). But, expert testimony that is not grounded in "sufficient facts or data," or not the product of "reliable principles and methods," as required by Rule 702, is properly excluded as "pure conjecture." *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 679 (6th Cir. 2011).

A disclosed expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii).

### 2. Damages for Trade Secret Misappropriation

The Michigan Uniform Trade Secrets Act (MUTSA) entitles a complainant to recover damages for misappropriation:

> Damages can include both the actual loss caused by misappropriation and the <u>unjust enrichment</u> caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a <u>reasonable royalty</u> for a misappropriator's unauthorized disclosure or use of a trade secret.

M.C.L. § 445.1904 (2014) (emphasis added). Here, as previously noted, Mr. Lee's Report presents both unjust enrichment and reasonable royalty-based damage claims.

"It seems generally accepted that 'the proper measure of damages in the case of a trade secret appropriation is to be determined by reference to the analogous line of cases involving patent infringement....' " *University Computing Co.*

MSC Software Corporation v. Altair Engineering, Inc., Not Reported in Fed. Supp. (2015)

2015 WL 13273227

*v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535 (5th Cir. 1974) (case citation omitted).


### (a) The Requirement of Apportionment

**\*4** *University Computing* also explained the controlling principle that damages must be confined or apportioned to the value or contribution made by the misappropriated features contained within a multi-component product.

> In the early case of *Egry Register Co. v. Standard Register Co.*, 23 F.2d 438 (6th Cir. 1928), a patent infringement case, the defendant manufactured and sold cash registers which in part used a device developed by the plaintiff to roll paper through the machine. The trial court had awarded the plaintiff the total profits the defendant had made on all sales of the machines using this device. The Sixth Circuit Court of Appeals held this measure of damages was inequitable, because the device was only a part of the larger product sold by the defendant. Because no actual apportionment of profits based on what percentage of the success of the marketing of the machines was due to the plaintiff's device could be shown, the court held the proper measure of damages would be a reasonable royalty on defendant's sales, thereby creating an apportionment of profits based on an approximation of the actual value of the infringed device to the defendant.

*Id.* at 536-37 (emphasis added). Continuing:

> If the defendant enjoyed actual profits, a type of restitutionary remedy can be afforded the plaintiff—either recovering the full total of defendant's profits or some apportioned amount designed to correspond to the actual

> contribution the plaintiff's trade secret made to the defendant's commercial success.

*Id.* at 539 (emphasis added).

This rule of law was thoroughly enunciated in a recent Federal Circuit opinion:

> As we explained recently in *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308 (Fed. Cir. 2014), where multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. 767 F.3d at 1326 (citing *Garretson v. Clark*, 111 U.S. 120, 121, 4 S.Ct. 291, 28 L.Ed. 371 (1884)). As a substantive matter, it is the "value of what was taken" that measures a "reasonable royalty" under 35 U.S.C. § 284. *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 648, 35 S.Ct. 221, 59 L.Ed. 398 (1915). What is taken from the owner of a utility patent (for purposes of assessing damages under § 284) is only the patented technology, and so the value to be measured is only the value of the infringing features of an accused product.
>
> When the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features. Indeed, apportionment is required even for non-royalty forms of damages: a jury must ultimately "apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features" using "reliable and tangible" evidence. *Garretson*, 111 U.S. at 121, 4 S.Ct. 291. Logically, an economist could do this in various ways—by careful selection of the royalty base to reflect the value added by the patented feature, where that differentiation is possible; by adjustment of the royalty rate so as to discount the value of a product's nonpatented features; or by a combination thereof. The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.

**\*5** *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (emphasis added).

The Court's jury charge from the original trial conformed to the case law summarized above:

MSC Software Corporation v. Altair Engineering, Inc., Not Reported in Fed. Supp. (2015)

2015 WL 13273227

> The reasonable royalty must be for the individually misappropriated Trade Secrets and not based on the entire software product or product lines. However, Plaintiff may recover damages based upon the entire product rather than individual Trade Secrets where the Plaintiff shows that the individual Trade Secrets constitute the basis for customers' demand or are [sic] such importance that the Trade Secrets substantially create the value of the entire product.

Apr. 8, 2014 Tr. at 17, reproduced in Ex. 22 to Altair's motion.[2]

[2]   The second sentence of the jury charge relates to the Entire Market Value Rule ("EMVR"), which is discussed in the following section.

The same requirement that reasonable royalty-based damages be apportioned applies to Lee's alternative unjust enrichment theories. Judge Borman of this District denied a *Daubert* challenge where plaintiff's damage estimate was based on misappropriation of the plaintiff's Business Process as a whole in case the jury found misappropriation of the entire Process. Relevant to the present case, however, Judge Borman specifically noted that "when seeking damages for the individual trade secrets, [plaintiff] must provide some correlation between the damages it seeks and the trade secrets misappropriated. [The expert's] opinion, which is based on misappropriation of the Business Process as a whole, will not suffice as proof of the value for each individually misappropriated trade secret.... A causal connection must be established under M.C.L. § 445.1904." *Expeditors Int'l of Washington v. Vastera, Inc.*, 2004 WL 6047214, at *7 (E.D. Mich., June 29, 2004). *See also, Ericsson, supra.*

The apportionment requirement has been applied in other unjust enrichment cases:

> Alcatel wholly fails to apportion its allegedly misappropriated and intangible intellectual property from the rest of [the accused] product.... Instead, Alcatel essentially attempts to attribute every penny of [the defendant company's] purchase price and every penny of the [accused] technology to the value of its alleged trade secrets. This maneuver, however, reeks of incongruity and underscores the speculative nature of Alcatel's alleged damages.

*Alcatel USA, Inc. v. Cisco Sys., Inc.*, 239 F.Supp. 2d 660, 670-71 (E.D. Tex. 2002).

In *KW Plastics v. U.S. Can Co.*, 131 F. Supp. 2d 1289 (M.D. Ala. 2001), the Court excluded expert testimony where the expert "did not attempt to determine the value of the specific trade secrets used [but assumed] that each and every penny that KW gained constitutes unjust enrichment." *Id.* at 1295.

In a case involving trade secrets in computer-aided design software, the district court rejected plaintiff's unjust enrichment damage methodology because it would "create a windfall totally disproportionate to the value Autodesk realized from the [the misappropriated trade secret] alone." *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 1994 U.S. Dist. LEXIS 18737, at *67 (D. Vt. Dec. 23, 1994) (overruled on other grounds). Although neither court seems to have used the term "apportionment," the Second Circuit Court of Appeals agreed with the magistrate judge "that the evidence before him was 'too imprecise and speculative as well as based on opinion and survey results which rely on assumptions and hypotheticals' to permit him to determine the unjust enrichment that VMI wanted Autodesk to disgorge." 138 F.3d 449, 450 (2nd Cir. 1998).

**\*6** The consistent holdings of this line of cases can be summarized by the seminal *Garretson* decision of the Supreme Court, cited, in *Ericsson, supra, and LaserDynamics, infra.* A patentee:

> must in every case give evidence tending to separate the defendant's profits and the patentee's damages between the patented features and the unpatented features, and such evidence must be reliable and tangible, and

not conjectural or speculative; _or_ he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the _entire value_ of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.

_Garretson v. Clark_, 111 U.S. 120, 121 (1884) (emphasis added). _Garretson_ thus establishes the basis for both the requirement of apportionment and the special case of the entire market value rule (EMVR), discussed in the next section.

### (b) The Entire Market Value Rule

The Lee Report does not apply the apportionment rule to any of his damage theories. Instead of apportioning the damages to the incremental value added by the three trade secrets to Altair's entire MotionSolve software program, his various damage claims are based on his estimate of the entire profit of MotionSolve or on the entire value of MotionSolve. It is therefore necessary to consider the entire market value rule ("EMVR") and the limited circumstances where it can properly be applied.

The EMVR can be simply stated:

If it can be shown that the patented feature drives the demand for an entire multi-component product, a patentee may be awarded damages as a percentage of revenues or profits attributable to the entire product.

_LaserDynamics, Inc. v. Quanta Computer, Inc._, 694 F.3d 51, 67 (Fed. Cir. 2012). The Court observed that the EMVR is derived from the Supreme Court's _Garretson_ precedent, quoted above. _Id._ The Court's application of the EMVR to the _LaserDynamics_ facts serves as a useful example here. The patent was directed to a method that improved the functionality of an optical disc drive ("ODD"), a device particularly useful in laptop computers. The Court held that

LaserDynamics failed to present evidence showing that the patented method drove demand for the laptop computers:

It is _not enough to merely show_ that the disc discrimination method is viewed as valuable, important, or even _essential to the use of the laptop_ computer. Nor is it enough to show that a laptop computer without an ODD practicing the disc discrimination method would be commercially unviable. Were this sufficient, a plethora of features of a laptop computer could be deemed to drive demand for the entire product. To name a few, a high resolution screen, responsive keyboard, fast wireless network receiver, and extended-life battery are all in a sense important or essential features to a laptop computer; take away one of these features and consumers are unlikely to select such a laptop computer in the marketplace. But proof that consumers would not want a laptop computer without such features is not tantamount to proof that any one of those features alone drives the market for laptop computers

**\*7** _LaserDynamics, Inc._, 694 F.3d at 68 (emphasis added).

This Court's jury instruction from the earlier trial correctly stated the EMVR:

Plaintiff may recover damages based upon the entire product rather than individual Trade Secrets where the Plaintiff shows that the individual Trade Secrets constitute the basis for customers' demand or are [sic] such importance that the Trade Secrets substantially create the value of the entire product.

Apr. 8, 2014 Tr. at 17, reproduced in Ex. 22 to Altair's motion. However, it must be remembered that the EMVR is only available in those limited circumstances:

> [W]hen claims are drawn to an individual component of a multicomponent product, it is the exception, not the rule, that damages may be based upon the value of the multi-component product.

*VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014). "Without any evident record that the patented features were the basis for customer demand for the [product] as a whole, the trial court properly foreclosed further evidence on this unsupported [EMVR] theory." *Imonex Services, Inc. v. W.H. Munzpufer Dietma Trenner GMBH*, 408 F.3d 1374, 1380 (Fed. Cir. 2005).

## II. DISCUSSION

### A. The Parties' Competing Products

MSC and Altair supply computer-aided engineering ("CAE") software programs used by engineers to design and test products through simulations run on computers, without having to build, test and modify actual physical samples of the product. To do this, the software programs create mathematical equations to represent or model the structure of the product, and then compute how the product will behave when subjected to various forces during use. By simulating on the computer the behavior of products under conditions of use, the software significantly reduces the time and cost of designing and testing complex and costly end products and their components.

The particular software systems involved in this lawsuit are used to determine the behavior of solid bodies consisting of multiple parts that are connected by joints that enable the individual parts to move relative to each other. An example of such a jointed body is an automotive suspension assembly, made up of wheels, axles, links, springs and shock absorbers. These jointed bodies are called multibody dynamic systems ("MBD").

This type of engineering software typically consists of a package of individual software programs, each performing a particular phase of the behavior analysis. This lawsuit concerns certain functions in the parties' respective "solver" programs, which receive and process information from one of the other package programs, and pass on the resulting data to other programs in the package that enable users to visualize and analyze the data. Specifically, the lawsuit focuses on only three functions or portions of MSC's solver program that the jury found were trade secrets misappropriated by Defendants and used in Altair's solver program.

Altair itself described MSC's solver, called ADAMS/Solver, as the dominant solver in the MBD field. (MSC's Resp. Br., Ex. 2 at 10). Altair's competing solver, called MotionSolve, is one of several related software programs in Altair's package of programs, called HyperWorks. MotionSolve was first released or sold in about 2002, but that early generation solver was not capable of solving the most complex types of problems, and did not enjoy a significant place in the MBD market. (*Id.*, Ex. 3). In November, 2005, Altair's President wrote, "Yes we are serious about being a significant player in MBD." (*Id.*, Ex. 4).

*8 In early January of 2006, Mr. Rajiv Rampalli, MSC's Senior Director of Development of the ADAMS product, was dissatisfied with the situation at MSC, and sent his resume to Altair. An Altair internal document of late January, 2006, referring to Mr. Rampalli, stated: "[W]e should get him if we are serious about making inroads in MBD." (*Id.*, Ex. 6). After Altair's discussions with a former MSC ADAMS/Solver Manager in early February, 2006, another Altair document stated:

> Rajiv is THE one guy who knows the numerical solver stuff in ADAMS (new and original) inside and out. Rajiv knows every last nuance of how those integrators work including the stiff integrators. Everyone of the ADAMS team went to Rajiv when they were stuck and he would fix their problems. Rajiv has a sixth sense about tuning things to go fast. While he's great with customers and a good manager, he's at his best working

MSC Software Corporation v. Altair Engineering, Inc., Not Reported in Fed. Supp. (2015)

2015 WL 13273227

through the difficulties of the solver development.

*Id.*, Ex. 7 (emphasis in original).

Mr. Rampalli joined Altair in July of 2006, and participated in ongoing upgrading of Altair's MotionSolve product. The extent of his contribution is not here relevant. Improved versions were soon released, and the number of users of that product increased dramatically in the following years. (*Id.*, Ex. 3).

**B. Lee's Unjust Enrichment Analysis**
Because Altair's pricing and internal accounting systems for its HyperWorks package of software programs do not isolate MotionSolve revenue from the rest of HyperWorks revenue, Mr. Lee's unjust enrichment damage calculations used two different methodologies to estimate MotionSolve revenue from 2007 to 2014.

His first methodology is based on Altair's token-based licensing model. Each software program in HyperWorks requires a different number of tokens (called HyperWorks Units or HWUs) for one minute of its use. While a user is using a program, a certain number of HWUs are checked out. For example, MotionSolve uses 25 HWUs. If a customer has a license for 100 HWUs, and a user launches MotionSolve, then there will only be 75 HWUs available for other users. Once the user stops using MotionSolve, the 25 HWUs are returned and available for other users.

Mr. Lee concludes HyperWorks revenue should be allocated to each Altair software program based on the relative value of each program's HWU price. (Lee Rep. at 5, Ex. 1 to Altair's Motion). Using a number of assumptions and adjustments, he concluded that MotionSolve revenue from 2007 to 2014 totaled $60.9 million, or 5.7% of HyperWorks revenue. (*Id.* at 62-71). Altair challenges this method on a number of grounds: (1) it does not meaningfully differ from the method used by another MSC expert (Mr. Den Uyl), whose expert opinion was struck prior to the first trial; (2) it focuses only on price and ignores quantity (usage); (3) it is contrary to Generally Accepted Accounting Principles (GAAP); and (4) it arbitrarily inflates the HWU "token draw" method by omitting certain HyperWorks programs.

Mr. Lee's second method of estimating MotionSolve revenue assumed that Altair sold that product as a stand-alone program, rather than bundled as part of the HyperWorks package of program. He had to make assumptions for the price of MotionSolve as a stand-alone product, the number of customers who would buy it in that form, and the costs associated with it in that form. Using that method, Mr. Lee estimated MotionSolve revenue for that period would have been between $43.4 million and 54.2 million. (*Id.* at 71-74). Although Mr. Lee contends that it is Altair's burden to prove incremental costs that should be deducted from its revenue, he made his own calculations of what those costs were, and assumed that Altair would have generated cumulative MotionSolve incremental profits between $23.3 million and $34.8 million during the relevant period. (*Id.* at 75-77). Altair, having never sold MotionSolve as a stand-alone product, challenges this methodology as based on a series of entirely speculative assumptions.

**\*9** Altair also asserts that Mr. Lees's unjust enrichment theories should be excluded here because Altair has made no profit from MotionSolve. It contends that its best estimate is that MotionSolve has generated less than $2 million in revenue and that its development costs are in excess of $6 million. "Normally only the defendant's <u>actual</u> profits can be used as a measure of damages in cases where profits can be proved, and the defendant is normally not assessed damages on wholly speculative expectations of profits." *University Computing Co.*, 504 F.2d 518 at 536 (emphasis added). Where there are no profits or they cannot be accurately measured, an award of unjust enrichment is not appropriate. *Id.* ("no actual profits exist[ed] by which to value the worth to the defendants of what they appropriated").

Thus, both of Mr. Lee's methodologies for computing unjust enrichment damages are the subject of vigorous dispute and voluminous analysis and supporting exhibits from the parties.

However, Altair's fundamental challenge to Mr. Lee's unjust enrichment calculations is his conclusion that no apportionment of MotionSolve profits to the three trade secrets is required:

> Based on my review of the 2014 trial testimony and subsequent discussions with MSC's witnesses and technical experts,[3] Altair would not have been able to develop and market an MBD

Case No. 1:18-cv-00817-DDD-STV Document 123-10 filed 08/23/19 USDC Colorado pg 10 of 37

MSC Software Corporation v. Altair Engineering, Inc., Not Reported in Fed. Supp. (2015)

2015 WL 13273227

solver that could match ADAMS/ Solver results across all necessary simulations with comparable speed, accuracy, and robustness without the Trade Secrets. The Trade Secrets allowed MotionSolve to solve the full array of complex problems that matched ADAMS/Solver results which customers demanded. Without the Trade Secrets, Altair would be in a similar position to the one it was in at the end of 2005 (see Opinion #1) with few MotionSolve customers and little to no MBD solver revenue. Since the Trade Secrets enabled MotionSolve to solve complex problems which customers required in order to consider and ultimately purchase Altair's MBD solver and allowed Altair to market MotionSolve as a ADAMS/ Solver replacement, Altair would not have generated revenue attributable to MotionSolve without the Trade Secrets. As a result, the Plaintiff is entitled to 100% of the incremental profits derived from MotionSolve.

Lee Report at 77 (emphasis added). *See also*, Lee's Rebuttal/ Supplemental Rep., Doc. 987, Ex. A., at 9, final sentence bridging to 10. In his subsequent deposition, Mr. Lee confirmed that he made no determination of the value of the trade secrets in MSC's ADAMS/Solver, and no allocation of their value within MotionSolve as opposed to the value of other features of MotionSolve:

Q. What did you do as part of your investigation to determine the value of the three trade secrets in this case?

A. The value of the trade secrets?

Q. Yes. Did you do any sort of determination of the value of the trade secrets, for example, in ADAMS/Solver?

A. No.

Q. Did you do any sort of determination or allocation of the value of the three trade secrets within MotionSolve as opposed to the other features of the MotionSolve?

A. No. I don't think that's required in this case given the subject matter and the asset in question.

Q. Okay. So leaving aside whether it's required, you didn't do any sort of an allocation or apportionment for ADAMS/Solver or for MotionSolve. Is that correct?

A. No. I don't believe that's required.

(Ex. 3, Lee Dep. at 7:1-20) (emphasis added); *see also* 188:9-191:2.

3    Mr. Lee's own footnote at this point lists "discussions with Doug Peterson, John Hoban, Joseph McGrath and Doug Neill." The insufficiency of his reliance on these sources is discussed *infra*.

Mr. Lee's failure to allocate the value of the trade secrets, and the insufficiency of support for the alternative EMVR, both discussed below, are the bases for my opinion that his testimony on the unjust enrichment damage theory should be excluded. *E.g.*, *University Computing, 504 F.2d at 539*; *Expeditors Int'l*, 2004WL 6047214, at *7; *Vermont Microsystems*, 1994 U.S. Dist. LEXIS 18737, at *67.

**C. Lee's Lump Sum Reasonable Royalty Analysis**

 **\*10** Lee's testimony, quoted immediately above, that he made no determination of the value of the three trade secrets in either ADAMS/Solver or MotionSolve because he did not think it was required, also applies to his reasonable royalty theory of damages. Although he uses the term "the Trade Secrets" when referring to the subject matter of the hypothetical lump sum reasonable royalty license negotiations, his analysis is based on the perceived value to the respective parties of the entire ADAMS/Solver product.

He concluded that MSC would have agreed to a paid-up single payment royalty of between $22.5 million and $29.5 million in a hypothetical negotiation between the parties on or before July 20, 2006, just before Mr. Rampalli joined Altair and prior to the date the first trade secret was misappropriated.

MSC acquired MDI (the company that originally developed ADAMS/Solver, its primary product) for $120 million in 2002. Mr. Lee calculated that $75-$83 million of that purchase price was attributable to ADAMS/Solver (*i.e.*, the entire product) and that MSC subsequently expended $19.9 million in additional research and development on that product. He made no apportionment of those figures

MSC Software Corporation v. Altair Engineering, Inc., Not Reported in Fed. Supp. (2015)

2015 WL 13273227

for the three trade secret portion of the solver. Based on his conversations with Kevin Rubin, MSC's Chief Financial Officer, MSC would have demanded a paid-up royalty of at least $37 million to license the Trade Secrets, or about 40 percent of MSC's investment in <u>ADAMS/Solver</u> (again, the entire product) at the negotiation date. [4] (Lee Report at 95). Mr. Lee presents no analysis or calculation of the value to either MSC or to Altair of the portion of the respective solvers implemented by the three trade secrets.

[4]    That estimate appears in Mr. Rubin's trial testimony on March 6, 2014 at 69. Mr. Rubin reiterated that estimate in more recent discussions with Mr. Lee, notwithstanding that only three of the five asserted trade secrets at the time of his testimony remain in this case (Lee Report at 96, fn. 352).

MSC estimated it would lose between one-third and one-half of ADAMS/Solver revenue if Altair were able to develop a fully competitive solver, resulting in a $26.3 to $39.5 loss in value of ADAMS/Solver to MSC. (*Id.* at 96).

Looking at the hypothetical lump sum reasonable negotiation from Altair's viewpoint, Mr. Lee used his own projections of MotionSolve revenue, expenses and cash flow, as of the negotiation date. (Lee at 103). He cited MDI/ MSC's development of the <u>entire</u> ADAMS/Solver program, estimated to have involved at least 150 man years and $29.4 million (*Id.* at 54-56), and estimated that without a license from MSC, Altair would have projected development costs, assuming 150 man-years of development, of $26.9 million to develop MotionSolve (*i.e.*, the <u>entire</u> program) to match the performance of ADAMS/Solver. (*Id.* at 105-06). Referring again to Altair's need to develop a solver competitive with ADAMS/Solver, he concludes:

> If Altair did not want to spend 150 many years and $26.9 million developing MotionSolve internally (see Exhibit 9A), the only way to accelerate the development of MotionSolve so that it could match ADAMS/Solver results across all necessary simulations with comparable speed, accuracy and robustness was to license the Trade Secrets from MSC. This issue was addressed at length in the 2014 trial by Mr. Peterson, Mr. Rampalli, Mr.

> Hoban, Mr. McGrath, and others. From my review of the testimony, the Trade Secrets were critical in allowing Altair to develop MotionSolve on an expedited basis.

**\*11** *Id.* at 101-102. He then concluded that Altair would have been willing to pay MSC between $18.8 and $29.6 million for a license "of the Trade Secrets."

Altair challenges Mr. Lee's methodology and facts on a number of grounds: (1) it relies on Rubin's unsupported conclusion that MSC would lose one-third to one-half of its revenue if it licensed Altair; (2) it estimates what Altair would be willing to pay based on an extrapolation of revenue from a different Altair product that was never actually created; (3) its opinion that Altair would be willing to pay up to $29.6 million up front for a license, exceeding even his speculative profit calculation of at least $23.3 million, is contrary to case law excluding expert testimony proposing a "profit eliminating" royalty. I have not evaluated these challenges because of my reliance on Mr. Lee's failure to perform the required apportionment as dispositive of Altair's motion.

Mr. Lee's conclusions fail to satisfy the requirements of Rule 702, *Daubert* and the case law's requirement of apportionment. For example:

- Further evidence of the absence of the required apportionment is the fact that Mr. Rubin did not reduce his Trade Secret royalty demand figure from the time of his trial testimony, when five alleged trade secrets were the basis of his demand, to his post-trial discussion with Mr. Lee, when only three trade secrets remained

- He apportioned the value of the entire ADAMS/Solver product relative to the other asserts that MSC purchased from MDI, and the value of MSC's subsequent R & D in ADAMS/Solver, but did not make the more relevant apportionment of the portion of those figures that were directed to the acquisition of the three trade secrets or the subsequent R & D directed to them. (Altair Rep. Br., Ex. 2, Dep. at 337-340).

- Similarly, in presenting his view of Altair's considerations at the time of the hypothetical negotiation, he characterized Altair's option to licensing as spending "150 many years and $26.9 million developing MotionSolve internally," once again directing his

MSC Software Corporation v. Altair Engineering, Inc., Not Reported in Fed. Supp. (2015)

2015 WL 13273227

analysis to the unapportioned entire MotionSolve product rather than to the three trade secrets. He presented no analysis or facts as to the time and expense required for Altair to itself develop the functionality provided by the three trade secrets.

Lack of credibility of an expert's report is not a basis for exclusion under *Daubert* and Rule 702. However, one cannot help but note that spending "150 many years and $26.9 million developing MotionSolve internally" would seem to be excessive for developing the functional equivalent of just the three trade secret portion of MotionSolve. As Altair's technical expert, Dr. Cay Horstmann, noted in his Expert Report, the three trade secrets were identified at trial in less than 100 lines of code in two source files out MotionSolve's more than 1300 source files. MotionSolve has about one million lines of code. (Horstmann Rep. at 6-7). Dr. Horstmann observed that Mr. Lee's estimate of the extent that the trade secrets accelerated MotionSolve's development was "astounding," and he found support for his reaction to that estimate in the testimony of MSC's Vice President of Product Development, Douglas Neill. As stated by Dr. Horstmann:

> **\*12** [Dr. Neill] testified about the algorithms relating to the three trade secrets within ADAMS and stated based on his experience that "I've been a developer too" that "these algorithms are relatively simple to implement."

Horstmann Rep. at 46, quoting Neill Dep. of June 9, 2015 at 63-64.

Thus, Mr. Lee's lump sum reasonable royalty analysis is based on his perception of an <u>irrelevant</u> hypothetical negotiation between willing buyers and sellers at the time of misappropriation. It is irrelevant because it is not directed and confined to the three trade secrets that were misappropriated.

Mr. Lee's failure to allocate the value of the trade secrets, and the insufficiency of support for the alternative EMVR, both discussed below, are the basis for my opinion that his testimony on the lump sum reasonable royalty damage theory should be excluded. *E.g., University Computing, 504 F.2d at 536-37; Ericsson, 773 F.3d at 1226.*

**D. The MSC/Lee Rationale for Non-Apportionment**
Mr. Lee testified, as quoted in Section II-B above, that he made no attempt to value the contribution of the three trade secrets to MotionSolve's performance as compared with the contribution of that product's other features. He concluded

that apportionment was not required in this case "given the subject matter" and the "asset in question."

What did Mr. Lee mean by "subject matter" and "asset in question"? His Report and MSC's Brief in Response suggest several possible explanations:

1. Because of the way Altair structured its revenue for MotionSolve within its HyperWorks package of programs, it is not MSC's burden to apportion damages to the three trade secrets.

2. The Entire Market Value Rule ("EMVR") is not directly applicable to trade secret cases generally, or to the lump sum reasonable royalty theory specifically.

3. The three trade secrets created the demand for MotionSolve, therefore satisfying the EMVR.

These three arguments are discussed in the following sub-sections.

### 1. The contention that Altair has the burden to apportion damages
MSC contends that Altair structured its revenue for HyperWorks so that it is not allocated to MotionSolve and the other separate software programs. Therefore, to measure Altair's gains from misappropriation of the trade secrets utilized in MotionSolve, apportioning HyperWorks revenue to that one program must be estimated before incremental costs are deducted or apportionment occurs. MSC further contends that apportionment in trade secret cases favors placing the burden of apportionment on the defendant. (Resp. Br. at 17-21). In support, MSC cites The Restatement of the Law, Third, Unfair Competition:

> The plaintiff has the burden of establishing the defendant's sales; the defendant has the burden of establishing any portion of the sales not attributable to the trade secret and any expenses to be deducted in determining net profits.... The defendant must account not only for profits earned on sales of products incorporating the trade secret, but

2015 WL 13273227

also on other sales dependent on the appropriation.

*Id.* at § 45 (comment f).

Altair responds that Michigan has not adopted the Restatement of Unfair Competition, but instead looks to the Restatement of Torts as it relates to trade secrets. *See, e.g., Nartron Corp. v. Amway Corp.*, No. 201487, 1999 WL 33435058, at *2 (Mich. Ct. App. Oct. 12, 1999). Altair also notes that, were the Restatement of Unfair Competition applicable here, the Restatement's Comments suggest that "an award of defendant's entire profit may be unjust."

> **\*13** If the trade secret accounts for only a portion of the profits earned on the defendant's sales, such as when the trade secret relates to a single component of a product marketable without the secret, an award to the plaintiff of defendant's entire profit may be unjust.

Restatement (Third) of Unfair Competition § 45 Comment (f).

MSC also relies for its burden-shifting argument on *Westinghouse Elec. & Man. Co. v. Wagner Elec. & Man. Co.*, 225 U.S. 604 (1912). In the following excerpt, the portion that MSC omitted from its quoted excerpt is italicized (Resp. Br. at 18-19), and the underlining is my added emphasis:

> But [the burden on defendant] is not imposed by law; nor is it so shifted until after the plaintiff has proved the existence of profits attributable to his invention, and demonstrated that they are impossible of accurate or approximate apportionment. *If then the* burden of separation is cast on the defendant, *it is one which justly should be borne by him,* as he wrought the confusion.

*Id.* at 622. [5] Thus, "*Westinghouse* only applies where no approximate apportionment is possible." *Advanced Technology Incubator, Inc. v. Sharp Corp.*, 2010 WL 1170220, at *2 (E.D. Tex. Feb. 24, 2010).

[5]   *Westinghouse* also reaffirms the Supreme Court's earlier *Garretson* decision (cited in *Ericsson, supra*) that profits and damages must be apportioned between the patented and unpatented features unless "the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature." *Id.* at 615.

Mr. Lee and MSC have not shown that "no approximate apportionment is possible." Mr. Lee developed two methods for estimating Altair's MotionSolve revenue and profits, as summarized in Section II-B, *supra*. Those apportionments may have been difficult, and may be subject to criticism, but MSC has not shown that approximate apportionment of Hyperworks revenue and profits to those attributable to MotionSolve was impossible under *Westinghouse*. Even more to the point, Mr. Lee never complained that the second level of apportionment, namely, the critical apportionment of MotionSolve's revenue or profits attributable to the three trade secrets, was impossible; he never attempted it. He simply concluded that apportionment was not "required." Lee Dep. at 7:1-20, quoted above.

If Mr. Lee had concluded that apportionment of the value of the three trade secrets relative to the totality of functions and features of MotionSolve was a prerequisite to any well-founded and credible damage theory, there are a number of ways he might have undertaken that task. But he made no such attempts. Although MSC disputes whether Altair has in fact removed the trade secrets or derivative alternatives (Resp. Br. at 14-16), Mr. Lee did not request that tests could have been performed on MotionSolve with and without the presence of the trade secret-implementing portions of the code, to determine the difference in performance as to speed, accuracy and robustness. (Ex. 3 to Altair's Main Br., Dep. at 190:14-21). Nor did MSC's technical expert, Mr. McNally. (Ex. 5, Dep. at 232:15-19; 235:8-236:5). Mr. Lee did not conduct any MotionSolve customer surveys or have MSC depose any customers to determine the importance or value of any incremental improvement in MotionSolve's speed, accuracy or robustness when the trade secrets were added. (Ex. 3, Dep. at 68:3-69:7, 190:22-191:2). [6] Did Altair's software release notes or User Guides for MotionSolve upgrades highlight any new capabilities that MSC's experts could tie to the addition of the trade secrets? Although he

testified that he did not, and could not, calculate MSC's and MDI's costs in developing the three trade secret portion of ADAMS/Solver (Ex. 2 to Altair Rep. Br., Dep. at 337:4-340:2), he made no attempt to determine what Altair saved by not having to independently develop them for MotionSolve or to remove or design around them. [7]

[6]   Court-approved discovery by MSC with regard to Altair's internal emails and depositions of certain Altair Application Engineers is still in progress. *See*, MSC's Resp. Br. at 14, fn.8, and 22, fn.12. Those sources may yield information relevant to the absent apportionment analysis or factual support for the EMVR. More diligent and timely discovery efforts by MSC into those topics might have provided Mr. Lee with a factual basis to undertake a credible apportionment analysis. In the event that such information is forthcoming, MSC might consider moving the Court for leave to Supplement Mr. Lee's Report to include that late-gathered evidence and analysis.

[7]   One method of apportionment that has been used in patent or trade secret cases is the "real estate approach," which may use the footprint area of circuitry on an integrated circuit chip or the number of lines of software code versus the total lines of code in the accused product. Those methods have survived *Daubert* challenges. *Finjan, Inc. v. Blue Coat Systems, Inc.*, Case No. 13-cv-03999-BLF(N.D. Cal. July 14, 2015); *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, No. C 04-1268 VRW (N.D. Cal. April 17, 2008). A contrary result in *Lucent Technologies, Inc. v. Gateway, Inc.* is nevertheless instructive. There, the Outlook software consisted of millions of lines of code, only a tiny fraction of which encoded the feature in question. The Court observed that "although the weighing of [the apportionment factor of *Georgia-Pacific*] cannot be reduced to a mere counting of lines of code, the glaring imbalance between infringing and non-infringing features must impact the analysis of how much profit can properly be attributed to the use of the [proprietary feature] compared to non-patented elements and other features of Outlook." 580 F.3d 1301, 1332-33 (Fed. Cir. 2009). In the present case, it is my understanding that the three trade secrets collectively occupy only about 100 out of about one million lines of code. Thus, this approximate apportionment method was available to Mr. Lee, but its result was obviously unattractive to MSC.

**\*14**  As additional support for its burden-shifting argument, MSC relies on a pair of copyright and trademark cases (Resp. Br. at 10). [8]  Those cases are inapt, because burden shifting is a statutory requirement under the applicable statutes, 17 U.S.C. § 504 and 15 U.S.C. § 1117, respectively. The MUTSA has no corresponding provision.

[8]   *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45 (2d Cir. 1939), aff'd, 309 U.S. 390 (1940), and *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595 (6th Cir. 1991).

MSC's reliance (*Id.*) on the *Jet Spray* [9] and *USM* [10] cases is also misplaced. Beyond a finding in *Jet Spray* that the trade secrets were used in all of the accused products, there was no apportionment of the value of the trade secrets to the overall product and no discussion of the EMVR. 385 N.E. 2d at 1358. Although the Court cited *Westinghouse* (*Id.* at n.14) regarding burden shifting, it seems to have misapplied or misinterpreted it. There was no discussion of the *Westinghouse* prerequisite for burden shifting, namely, plaintiff must first demonstrate the impossibility of apportionment. 225 U.S. at 622, quoted above. The *USM* court relied on that *Jet Spray* decision and on the copyright statute as support for burden shifting (467 N.E. 2d at 338), both of which have been shown to be distinguishable or inapplicable.

[9]   *Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 385 N.E.2d 1349, 1358 n.14 (1979).

[10]   *USM Corp. v. Marson Fastener Corp.*, 392 Mass. 334, 467 N.E.2d 1271 (1984).

MSC has failed to satisfy the *Westinghouse* prerequisite for burden shifting, *i.e.*, that approximate apportionment is impossible, Lee did not attempt apportionment; he erroneously concluded it was not required. The burden to apportion remains with MSC.

### 2. The contention that the Entire Market Value Rule ("EMVR") is not directly applicable to trade secret cases generally, or to the lump sum reasonable royalty theory specifically

The EMVR was simply stated in *LaserDynamics*, 694 F.3d at 67:

> If it can be shown that the patented feature drives the demand for an entire multi-component product, a patentee may be awarded damages as

2015 WL 13273227

a percentage of revenues or profits attributable to the entire product.

The Court's jury instruction from the earlier trial was consistent with *LaserDynamic's* statement of the rule:

> Plaintiff may recover damages based upon the entire product rather than individual Trade Secrets where the Plaintiff shows that the individual Trade Secrets constitute the basis for customers' demand or are [sic] such importance that the Trade Secrets substantially create the value of the entire product.

Apr. 8, 2014 Tr. at 17, reproduced in Ex. 22 to Altair's motion. But the EMVR is only available in those limited circumstances:

> [W]hen claims are drawn to an individual component of a multicomponent product, it is the exception, not the rule, that damages may be based upon the value of the multi-component product.

*VirnetX, supra,* 767 F.3d at 1326.

The *University Computing* case, a trade secret case quoted at length by Mr. Lee (Report at 42-45), held that "It seems generally accepted that 'the proper measure of damages in the case of a trade secret appropriation is to be determined by reference to the analogous line of cases involving patent infringement....' " *University Computing, supra* at 535. The requirement of apportionment, and the related Entire Market Value Rule (EMVR), are both established parts of the patent damages case law. *See, e.g., Ericsson* and *LaserDynamics, supra.* Furthermore, the *University Computing* excerpts from that case quoted in Section I-C-2(a) above state that apportionment is required both under a reasonable royalty approach and a restitutionary remedy based on defendant's actual profits.

**\*15** MSC contends that the EMVR requirement that the infringing component "drive the demand" for the entire product cannot ever literally apply to a trade secret case because, by its very nature, the trade secret is hidden from the customer (Resp. Br. at 14, 22). The hidden and unknown trade secret may not literally be what the customer demands, but in a credible EMVR case, the product's known functionality or physical property that is <u>enabled</u> by the hidden trade secret could very well be the basis of the customer's demand for the product.

Such was the case in *Versata Software,*[11] relied upon by MSC as "extraordinarily analogous." There, a secret algorithm involved a series of steps that enabled a vehicle "compare" feature. That feature permitted persons shopping for a vehicle to use the internet to configure and compare different vehicles, having differently named features and options, that were available for purchase. The court held that the trade secret was not only "incorporated into the vast majority of the software components sold by Versata.", but that "the <u>basis for the demand</u> for Versata's product was the 'compare' functionality enabled by the misappropriated schema." *Id.* at 856 (emphasis added). On that basis, the court held that "the jury was entitled to conclude that the trade secrets <u>were the basis for the core features</u> of the products offered to Toyota and that Versata's profits on the Toyota contracts were therefore entirely attributable to the trade secrets." *Id.* at 857 (emphasis added). Thus, *Versata Software* exemplifies the applicability of the EMVR to a trade secret case, notwithstanding that the trade secret that enabled the customer-demanded "compare" functionality was hidden and unknown to the customers.

[11]   *Versata Software, Inc. v. Internet Brands, Inc.,* 902 F. Supp. 2d 841 (E.D. Tex. 2012).

But MSC asserts that the court in *Versata Software* "refused to apply EMVR," and that such decision shows that MSC need not establish the elements of the EMVR to be entitled to all of MotionSolve's profits (Resp. Br. at 23-24). As support for that assertion, MSC quotes the third sentence of the following quote, without including the two preceding sentences:

> While seeming to object to the use of [the EMVR] approach, Versata does not specifically argue against that rationale, but instead simply states that "assuming arguendo that the entire market value rule applies in trade secret cases, the evidence here is not up to the task Autodata assigns to it." Dkt. No. 352 at 5. In any event, all that is

MSC Software Corporation v. Altair Engineering, Inc., Not Reported in Fed. Supp. (2015)

2015 WL 13273227

at issue here is whether the evidence supports the jury's finding that Autodata's trade secrets were of sufficient importance to Versata's work on the Toyota project that requiring Versata to disgorge all of its profits on the Toyota contracts is an appropriate remedy on the facts of this case.

902 F. Supp. 2d at 855, n.3 (emphasis by MSC). MSC relies on the "of sufficient importance" and "the basis for the core features" phrases as indicating that the court rejected the "drives the demand" criterion of the EMVR case law. But MSC's interpretation, based on those selected quotes, is negated by the court's explicit use of the "drives the demand" standard of the EMVR: "the basis for the demand for Versata's product was the 'compare' functionality enabled by the misappropriated schema." Id. at 856 (emphasis added). The court's phrase, "sufficient importance," highlighted by MSC, is neither a rejection of the EMVR as MSC contends nor does it negate the strict requirements of the EMVR that the trade secret or patented feature "drive the demand."

*16 Here, as in *Versata Software*, the three misappropriated trade secrets comprise specific rules or series of steps (*i.e.*, algorithms) governing how the software code processes the data to achieve the desired result (*i.e.*, a simulation). The customer, as Mr. Lee stresses, is concerned with the speed, accuracy and robustness of the solver, and perhaps even in its ability to match the results of ADAMS/Solver. But those are merely vague generic qualities of a solver, not quantifiable or tangible features, functions or results. The EMVR does not require that the customer know how the demanded feature or result is achieved, or know of an underlying patent or trade secret that describes that method or structure. But there must be an identifiable feature that is the basis for customer demand. See Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1320 (Fed. Cir. 2011) ("For the entire market value rule to apply, the patentee *must* prove that the patent-related feature is the basis for the customer demand.") (underlined emphasis added). As discussed in the next section, Mr. Lee and MSC have not made that showing.

Finally, MSC contends that the EMVR is not applicable to a paid-up, lump sum reasonable royalty (Resp. Br. at 24-26). It correctly cites cases for the proposition that this form of royalty is based on the parties' perception of the value of the alleged trade secrets at the time of the hypothetical negotiation, rather than upon the subsequent commercial success of the trade secret-containing product. The future "customer demand" element of the EMVR may not be fully known by the potential licensee at the time of the hypothetical negotiation (although the licensor's marketing history with its

own product may inform the negotiations). To that extent, the EMVR may not literally apply to a hypothetical negotiation of a lump sum form of reasonable royalty.

Nevertheless, the negotiating parties will necessarily consider the contribution that the licensed subject matter will make to the performance and marketability of the licensee's overall product. The oft-cited fifteen *Georgia-Pacific* factors to be considered in the hypothetical license negotiation include the apportionment concept, similar to the EMVR:

> 13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 116, 120 (S.D. N.Y. 1970). "The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson*, 773 F.3d at 226 (emphasis added). Mr. Lee's lump sum reasonable royalty analysis paraphrases *University Computing's* list of factors that parties would consider in the hypothetical negotiation (Rep. at 89), including the nature and extent of use the defendant intended for the secret, plaintiff's development costs and the importance of the secret to plaintiff's business. Not included in Mr. Lee's analysis is the following quote from *University Computing*:

> Because the primary concern in most cases is to measure the value to the defendant of what he actually obtained from the plaintiff, the proper measure is to calculate what the parties would have agreed to as a fair price for licensing the defendant to put the trade secret to the use the defendant intended at the time the misappropriation took place.

MSC Software Corporation v. Altair Engineering, Inc., Not Reported in Fed. Supp. (2015)

2015 WL 13273227

504 F.2d at 539 (emphasis added). MSC agrees, citing *LinkCo. Inc. v. Fujitsu Limited*, 232 F.Supp. 2d 182, 189 (S.D. N. Y 2002) (emphasis added): "The key, of course, is what the parties would have believed to be the reasonable value of the alleged trade secret at the time it was stolen."

Neither logic nor anything in Mr. Lee's Report or MSC's argument suggests that the perceived value and contribution of the licensed subject matter to the licensee's intended product as a whole would not be a factor in the parties' hypothetical negotiation for a lump sum reasonable royalty. In essence, the EMVR is a special case of the apportionment requirement: if the "incremental value" added by the trade secret or patented subject matter to the multi-component end product is 100 percent (such that it drives the demand for the end product), then the apportionment satisfies the EMVR; if the incremental value is less than 100 percent, then the EMVR is not satisfied. But the apportionment concept is still an implicit and necessary part of the hypothetical negotiation for a lump sum reasonable royalty.

**\*17** Thus, the requirement of apportionment, whether at the level of 100 percent to satisfy the EMVR for Mr. Lee's unjust enrichment damage theory, or to assess the "incremental value" (*Ericsson, supra*) for his lump sum reasonable royalty damage theory, is required here. The analysis in Mr. Lee's Report does not conform to either set of requirements.

### 3. The contention that the three trade secrets created the demand for MotionSolve

Mr. Lee's deposition testimony quoted above acknowledges that he made no attempt to allocate "the value of the three trade secrets within MotionSolve as opposed to the other features of the MotionSolve." He said that apportionment was not required. Instead, he concludes that MSC is entitled to "100% of the incremental profits derived from MotionSolve." That conclusion from page 77 of his Report is quoted in full in Section II-B above. Based on unspecified trial testimony and subsequent discussions with four MSC witnesses and technical experts, [12] he simply says that, without the Trade Secrets, Altair would not have been able: to match ADAMS/ Solver results "which customers demanded;" "to solve complex problems which customers required;" and "would not have generated revenue attributable to MotionSolve."

[12]   Altair's Main Brief documents the lack of basis that Lee's four named sources (Peterson, Hoban, McGrath

and Neill) could have provided for his conclusion. (Main Br. at 16-15). Their deposition testimonies confirm that they have not used MotionSolve, do not know how the trade secrets are used in MotionSolve, do not know whether the trade secrets are necessary to match ADAMS/Solver's results, and do not know whether the trade secrets drive customer demand for MotionSolve. Also, Mr. Lee testified that he had incorrectly assumed that Mr. McGrath, who was scheduled to participate in Mr. Lee's conference call with the other three sources, did so, but Mr. Lee later learned that he did not. (Ex. 3, Dep. at 48:11-24).

Just as MSC misinterpreted *Versata Software* and concluded that "MSC is not required to establish the elements of the EMVR in order for Altair to disgorge all of its MotionSolve profits" (Resp. Br. at 24), Mr. Lee misunderstands the requirements of the EMVR. Invoking the EMVR in his deposition testimony (though not mentioning it in his Report), he explained why he thought that rule was satisfied:

> [I]f Altair did not have access to the trade secrets, it would not have generated—it would not have been able to generate the MotionSolve revenue; and so as a result of that, as a result of the Entire Market Value Rule, MSC is entitled to a hundred percent of Altair's incremental profits associated with MotionSolve.

(Ex. 3, Dep. at 185:6-13). Similarly, he concluded that without the trade secrets MotionSolve would not be able to match ADAMS/Solver results "which customers demanded," or "to solve complex problems which customers required" (Report at 77). But Mr. Lee's conclusions that the three trade secrets were essential, even if factually supported and correct (which they are not), still fall short of satisfying the EMVR. "It is not enough to merely show" that the asserted trade secrets are essential to the use of MotionSolve, or that the program would not be commercially viable without them. *LaserDynamics*, 694 F.3d at 68. Paraphrasing the decision, "[P]roof that consumers would not want a [solver] without such features is not tantamount to proof than any one of [the trade secrets] drives the market for [solvers]." *Id*. Mr. Lee's Report fails to establish that his 100% conclusion "correspond[s] to the actual contribution the plaintiff's trade secret made to

the defendant's commercial success." *University Computing, supra* at 539. *See also, Garretson* and *VirnetX, supra*.

 **\*18**  Furthermore, the vague generic qualities of "speed, accuracy and robustness," and results comparable to those of ADAMS/Solver, are not quantifiable or tangible features or results. Unlike, *e.g.*, the specific vehicle "compare" functionality demanded by customers in the *Versata Software* case relied upon by MSC, the relative contribution and value of the three trade secrets to specific features or functionalities of the overall MotionSolve product are not described or calculated by Mr. Lee.

Mr. Lee cites various contemporaneous Altair documents and testimony from the former trial to show that Altair's objective was to upgrade its solver to match the performance of ADAMS/Solver and thereby become a significant player in that market. That record also shows that Altair recognized that hiring MSC employee, Mr. Rampalli, for his expertise and knowledge of ADAMS/Solver would greatly advance that goal, and suggests that Mr. Rampalli played a significant role in upgrading MotionSolve, and perhaps even in its matching the performance of ADAMS/Solver. (*Id.* at 32-36, 46-49). Indeed, it can even be assumed for present purposes that the three misappropriated MSC trade secrets contributed in some unspecified measure to that result.

But relevant to the extent of the trade secrets' unspecified contribution to specific functionalities demanded by customers, Mr. Lee has not provided any comparison of that contribution (whatever it may have been) with the contributions of the remaining features of MotionSolve that were not covered by the trade secrets. To satisfy the EMVR here, the balance of MotionSolve's approximately one million lines of code (*i.e.*, the remainder beyond the trade secrets' 100 lines of code) would have had to contribute nothing to achieving the speed, accuracy and robustness of ADAMS/Solver which Mr. Lee claims were demanded by customers.

Not only is that factual situation intuitively unlikely, but it flies in the face of the record. As stressed by Mr. Lee, Mr. Rampalli brought with him comprehensive knowledge of ADAM/Solver and expertise in the field of solvers for multibody dynamic systems. As Judge Roberts noted in her Order granting partial summary judgment to defendants on many of MSC's originally asserted trade secrets, "an employee is entitled to unrestricted use of general information acquired during the course of his employment, so long as that information is not confidential." (Doc. 589 at 14) (citations

omitted). It would be expected that Mr. Rampalli's admittedly substantial contribution to the enhancement of MotionSolve included many refinements to the pre-existing state of the product that were not dependent on the three misappropriated trade secrets, coming instead from his knowledge of non-confidential features of ADAM/Solver and his experience and expertise.

That expectation is confirmed by the record. Judge Roberts' partial summary judgment Order (Doc. 589) and subsequent Order regarding summary judgment motions (Doc. 691) concluded that somewhere between 10 and 16 of MSC's asserted trade secrets, though apparently used in MotionSolve, did not qualify as trade secrets. [13]

> [13]   My estimate of as many as 16 is based on my interpretation of the Court's rulings on asserted Technical Trade Secret Nos. 3, 4, 8, 10-14, 17, 33, 34, 36, 40, 47 and 50 (Doc. 589), and No. 21 (Doc. 691). As to those, the Court's summary of the parties' summary judgment contentions did not include a contention of non-use by Altair. The Court granted summary judgment dismissing others as well, but on grounds that such features were not used by Altair or were insufficiently defined by MSC to qualify as a trade secret. MSC's informal Comments to my Draft of this Report and Recommendation stated that there were originally 29 asserted Technical Trade Secrets, and that Judge Roberts "ruled as a matter of law that ten were not trade secrets." MSC's Comments also stated that "[T]here was no evidence presented at the first trial as to whether the dismissed or withdrawn trade secrets were incorporated into Motionsolve and, if so, what impact they had on performance."

 **\*19**  Whether the number of additional *non-proprietary* features of ADAMS/Solver (beyond the three misappropriated trade secrets) that were used in MotionSolve is 10 or 16, the significant fact is that several additional features were considered by MSC to be valuable contributors to the performance of ADAMS/Solver, and therefore to MotionSolve's performance as well. Those non-proprietary features are substantial evidence that the three misappropriated trade secrets were not, as Mr. Lee contends, the exclusive reason that MotionSolve was able to generate revenue. Neither Mr. Lee nor MSC has attempted to negate the contribution to MotionSolve customer motivation or Altair's revenue of: (1) these 10-16 non-proprietary features found in both ADAMS/Solver and MotionSolve; (2) other MotionSolve features that were undoubtedly added or enhanced as a result of Mr. Rampalli's knowledge and

expertise in the MBD solver field; and (3) features already present in MotionSolve before Mr. Rampalli was hired.

One of MSC's Comments to the Draft of this Report and Recommendation stated that the Draft did not "acknowleder or appear to consider the Lee Supplemental Report and the references to the evidence in the trial record related to the importance of the trade secrets to the ability of MotionSolve to match Adams results, satisfy customer expectations and become a marketable product. (See, Lee Supplemental Report, pp. 6-10; MSC Response Brief, pp. 8-14; and summary at R. 1032, pp. 2-21)." With regard to the cited portion of Mr. Lee's Supplemental Report, I find it mostly devoted to criticizing opposing damage expert Vellturo's Report, although one sentence bridging pages 9-10 (that I now cite near the end of Section II-B, *supra*) essentially reiterates his overall conclusion from page 77 of his Report that is quoted there.

The Comment also refers to pages of MSC's Response Brief and MSC's Objections (Doc. 1032) to a different Report and Recommendation (Doc. 1022). Both sources present citations to numerous exhibits and trial testimony said to describe features and enhancements derived from the three trade secrets. But the question for the Court that underlies this *Daubert* motion is whether "the testimony [of the expert] is based on sufficient facts or data" (Rule 702, *supra*) presented or specifically referenced in the expert's report, The expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). The Lee Report cites evidence about the role of the three trade secrets in ADAMS/Solver (Report at 38-41), not in MotionSolve. And it cites unspecified trial testimony and discussions with four people whose knowledge of MotionSolve was essentially nonexistent. (Report at 77). *See*, footnotes 3 and 13, *supra*, and accompanying text.

**\*20**  In summary, it is my opinion that there is no merit to any of the three justifications advanced by Mr. Lee and MSC for his opinion that he was not required to apportion the value of the three trade secrets' contribution to MotionSolve as compared with that of the product's other numerous features. He neither demonstrated that the role of the three trade secrets were the sole contributing sources of MotionSolve's generalized qualities of speed, accuracy and robustness, nor did he identify any specific function demanded by customers that was provided by the trade secrets. Having failed to follow the applicable law requiring apportionment of damages, Mr. Lee's Report is not "the product of reliable principles and methods" (Fed. R. Evid. Rule 702). Furthermore, his conclusions that the contribution of the three misappropriated trade secrets to the performance and revenue of MotionSolve entitled MSC to 100 percent of MotionSolve's incremental profits, or to a lump sum reasonable royalty based on the unapportioned value of the entire MotionSolve product, are not "based on sufficient facts or data" (*Id.*).

### All Citations

Not Reported in Fed. Supp., 2015 WL 13273227

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (69)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Counter-Plaintiff Altair Engineering, Inc.'s First Amended Counter-Complaint and Jury Demand** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger, and Michael Hoffmann, Defendants; Altair Engineering, Inc., Counter-Plaintiff, v. MSC.Software Corporation, Counter-Defendant. 2009 WL 4868491 | [PDF] | E.D.Mich. | Nov. 25, 2009 | Pleading |
| **2. First Amended Complaint** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd Mcdevitt, Mark Krueger, and Michael Hoffmann, Defendants. 2008 WL 3466973 | [PDF] | E.D.Mich. | June 18, 2008 | Pleading |
| **3. Answer and Affirmative Defenses of Todd McDevitt** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger and Michael Hoffmann, Defendants. 2007 WL 3089250 | [PDF] | E.D.Mich. | Aug. 08, 2007 | Pleading |
| **4. Answer, Affirmative Defenses and Jury Demand** MSC SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger and Michael Hoffman, Defendants. 2007 WL 3089251 | [PDF] | E.D.Mich. | Aug. 08, 2007 | Pleading |
| **5. Defendant Altair Engineering, Inc.'s Answer, Affirmative Defenses, and Jury Demand** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger, and Michael Hoffman, Defendants. 2007 WL 3089252 | [PDF] | E.D.Mich. | Aug. 08, 2007 | Pleading |
| **6. Complaint** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger, and Michael Hoffmann, Defendants. 2007 WL 3089248 | [PDF] | E.D.Mich. | July 05, 2007 | Pleading |

MSC Software Corporation v. Altair Engineering, Inc.

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **7. Response By Rajiv Rampalli to Plaintiffs Interrogatories** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd Mcdevitt, Mark Krueger, and Michael Hoffman, Defendants. 2007 WL 7531979 | PDF | E.D.Mich. | Sep. 04, 2007 | Deposition |
| **8. Defendant Altair Engineering, Inc.'s Answers to Plaintiff MSC.Software Corporation's Interrogatories** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger, and Michael Hoffman, Defendants. 2007 WL 6852855 | PDF | E.D.Mich. | Aug. 24, 2007 | Deposition |
| **9. Plaintiff Msc.Software's Supplemental Brief in Opposition to Motion for Partial Summary Judgment by Defendants** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Tom Riedemann, Stephan Koerner, Mark Krueger, Rajiv Rampalli and Michael Hoffmann, Defendants. 2013 WL 8605115 | PDF | E.D.Mich. | Sep. 05, 2013 | Motion |
| **10. Motion for Reconsideration of Order Requiring Defendant Altair Engineering, Inc. to Produce Metacomp Tool Used by Expert Witness James McInerney and to Produce Royalty Agreements** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger, and Michael Hoffmann, Defendants. 2012 WL 6027989 | PDF | E.D.Mich. | July 16, 2012 | Motion |
| **11. Altair Engineering, Inc's Motion and Brief for Reconsideration of Order Entered October 14, 2009 (Docket Nos. 377, 378) and of Order Entered October 16, 2009 (Docket No. 381)** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger, and Michael Hoffmann, Defendants; Altair Engineering, Inc., Counter-Plaintiff, v. MSC.Software Corporation, Counter-Defendant. 2009 WL 4868490 | PDF | E.D.Mich. | Oct. 23, 2009 | Motion |

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **12. MSC.Software's Response to Objection by Individual Defendants to Recommendation by Special Master Hollaar that they Not be Allowed to Review the Material that they Checked into Plaintiff's Source Code Repository** <br> MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger, and Michael Hoffman, Defendants. <br> 2009 WL 4868489 | PDF | E.D.Mich. | Oct. 01, 2009 | Motion |
| **13. Defendants' Motion for Reconsideration and Clarification of the Order Denying Defendants' Emergency Motion for Expedited Relief for Violation of the Amended Stipulated Protective Order** <br> MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger, and Michael Hoffman, Defendants. <br> 2009 WL 3397230 | PDF | E.D.Mich. | Sep. 11, 2009 | Motion |
| **14. Plaintiff MSC.Software's Response to Defendants' Supplemental Brief in Support of Motion for Expedited Relief** <br> MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Mark Krueger, and Michael Hoffmann, Defendants. <br> 2009 WL 3397229 | PDF | E.D.Mich. | Aug. 26, 2009 | Motion |
| **15. Supplemental Brief in Support of Defendants' Emergency Motion for Expedited Relief for Violation of the Amended Stipulated Protective Order and Request for Entry of Order for Expedited Discovery** <br> MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger, and Michael Hoffman, Defendants, Altair Engineering, Inc., Counter-Plaintiff, v. Msc.software Corporation, Counter-Defendant. <br> 2009 WL 3397228 | PDF | E.D.Mich. | Aug. 10, 2009 | Motion |
| **16. Plaintiff MSC.Software's Response to Defendants' Motion for Expedited Relief for Alleged Violation of the Amended Stipulated Protective Order** <br> MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Mark Krueger, and Michael Hoffmann, Defendants. <br> 2009 WL 2522290 | PDF | E.D.Mich. | June 26, 2009 | Motion |

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **17.** **Defendants' Emergency Motion and Brief for Expedited Relief for Violation of the Amended Stipulated Protective Order** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger, and Michael Hoffman, Defendants. Altair Engineering, Inc., Counter-Plaintiff, v. MSC.Software Corporation, Counter-Defendant. 2009 WL 2522288 | [PDF] | E.D.Mich. | June 19, 2009 | Motion |
| **18.** **Plaintiff MSC.Software's Response to Defendant Altair Engineering Inc's Motion to Find MSC.Software Corporation and Its Counsel in Contempt of Court** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Mark Krueger, and Michael Hoffmann, Defendants. 2009 WL 1933560 | [PDF] | E.D.Mich. | Jan. 02, 2009 | Motion |
| **19.** **Defendant/Counter-Plaintiff Altair Engineering Inc.'s Motion and Brief to Find MSC.Software Corporation and Its Counsel in Contempt of This Court's Amended Stipulated Protective for Admitted Disclosure of Highly Sensitive Material to an Unauthorized Person and for Contempt Sanctions** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger, and Michael Hoffman, Defendants. Altair Engineering, Inc., Counter-Plaintiff, v. MSC.Software Corporation, Counter-Defendant. 2008 WL 6512687 | [PDF] | E.D.Mich. | Dec. 23, 2008 | Motion |
| **20.** **Defendant/Counter-Plaintiff Altair Engineering, Inc's Response in Opposition to MSC.Software Corporation's Objections to Magistrate's June 10, 2008 Opinion and Order Regarding Discovery** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger, and Michael Hoffman, Defendants. Altair Engineering, Inc., Counter-Plaintiff, v. MSC Software Corporation, Counter-Defendant. 2008 WL 6512686 | [PDF] | E.D.Mich. | Dec. 04, 2008 | Motion |
| **21.** **MSC.Software Corporation's Supplemental Brief in Response to Defendants' Motion to Partially Dismiss Claims Predicated upon the ""Inevitable Disclosure" Doctrine Pursuant to Rule 12(b)(6)** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger, and Michael Hoffman, Defendants. 2008 WL 6512684 | [PDF] | E.D.Mich. | Dec. 03, 2008 | Motion |

MSC Software Corporation v. Altair Engineering, Inc.

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **22. Authorized Supplemental Brief in Support of Motion by Individual Defendants (Except Michael Hoffmann) to Partially Dismiss Claims Predicated upon the ""Inevitable Disclosure" Doctrine** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTATR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger. and Michael Hoffmann, Defendants. 2008 WL 6512685 | PDF | E.D.Mich. | Dec. 03, 2008 | Motion |
| **23. Defendant/Counter-Plaintiff Altair Engineering, Inc.'s Objections to Report and Recommendation of Special Master Lee A. Hollaar Regarding the Production By Altair Engineering of the Source Code Repository and Development Twiki** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger, and Michael Hoffman, Defendants, ALTAIR ENGINEERING, INC., Counter-Plaintiff, v. MSC.SOFTWARE CORPORATION, Counter-Defendant. 2008 WL 4676758 | PDF | E.D.Mich. | Sep. 22, 2008 | Motion |
| **24. Motion By Individual Defendants (Except Michael Hoffman) to Partially Dismiss Claims Predicated Upon the ""inevitable Disclosure" Doctrine --- And--- Brief Supporting Motion** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampall, Todd Mcdevitt, Mark Krueger and Michael Hoffman, Defendants. 2008 WL 4676757 | PDF | E.D.Mich. | Sep. 15, 2008 | Motion |
| **25. Motion By Individual Defendants to Re-designate Material Designated As Attorney Eyes Only or to Otherwise Permit Them to Learn Claims Against Them** MSC SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger and Michael Hoffmann, Defendants. 2008 WL 2377600 | PDF | E.D.Mich. | May 28, 2008 | Motion |
| **26. Plaintiff Msc.software Corporation's Reply to Defendants's Response to Plaintiff's Renewed Motion to Modify Protective Order** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd Mcdevitt, Mark Krueger, and Michael Hoffmann, Defendants. 2008 WL 2377599 | PDF | E.D.Mich. | Apr. 21, 2008 | Motion |

**WESTLAW**   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **27.  Defendants' Response to Plaintiff's Renewed Motion to Modify Protective Order**<br>MSC.SOFTWARE CORPORATION, Plaintiff, v. V ALTAIR ENGINEERING, Andrea Pertosa Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd Mcdevitt, Mark Krueger and Michael Hoffman, Defendants.<br>2008 WL 2377596 | PDF | E.D.Mich. | Apr. 07, 2008 | Motion |
| **28.  Plaintiff's Reply to Individual Defendants' Response to MSC.Software's Motion for Sanctions**<br>MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Todd Mcdevitt, Mark Krueger, and Michael Hoffmann, Defendants.<br>2008 WL 1737939 | PDF | E.D.Mich. | Mar. 31, 2008 | Motion |
| **29.  Reply in Support of Altair Engineering, Inc.'s Motion to Compel MSC.software Corporation to Comply with the Stipulated Order Regarding Pending Motions or Preclude Any Use of Withheld Materials**<br>MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger, and Michael Hoffman, Defendants.<br>2008 WL 1737940 | PDF | E.D.Mich. | Mar. 31, 2008 | Motion |
| **30.  Reply By Individual Defendants to Response By Plaintiff to Motion to Compel Compliance with Order**<br>MSC SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger and Michael Hoffmann, Defendants.<br>2008 WL 1737941 | PDF | E.D.Mich. | Mar. 31, 2008 | Motion |
| **31.  Reply in Support of Plaintiff's Motion for Entry of a protective Order Regarding Third-Party Subpoenas Issued By the Individual Defendants A**<br>MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd Mcdevitt, Mark Krueger, and Michael Hoffmann, Defendants.<br>2008 WL 1737938 | PDF | E.D.Mich. | Mar. 24, 2008 | Motion |
| **32.  Individual Defendants' Response to Plaintiff's Motion for Sanctions**<br>MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger and Michael Hoffmann, Defendants.<br>2008 WL 1737936 | PDF | E.D.Mich. | Mar. 17, 2008 | Motion |

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **33. MSC's Response to Altair Engineering, Inc.'s Motion to Compel Compliance With the Stipulated Order Regarding Pending Motions** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd Mcdevitt, Mark Krueger, and Michael Hoffmann, Defendants. 2008 WL 1737937 | PDF | E.D.Mich. | Mar. 17, 2008 | Motion |
| **34. Defendant Altair Engineering, Inc.'s Response in Opposition to Plaintiff MSC's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37(B) and/or (C)** MSC. SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd Mcdevitt, Mark Krueger, and Michael Hoffman, Defendants. 2008 WL 1737935 | PDF | E.D.Mich. | Mar. 14, 2008 | Motion |
| **35. Response By Individual Defendants to Plaintiff's Motion to Quash Subpoenas and Certificate of Service** MSC SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger and Michael Hoffman, Defendants. 2008 WL 1737934 | PDF | E.D.Mich. | Mar. 12, 2008 | Motion |
| **36. Plaintiff's Motion for Entry of Protective Order Regarding Third-Party Subpoenas Issued By the Individual Defendants** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger, and Michael Hoffmann, Defendants. 2008 WL 1737942 | PDF | E.D.Mich. | Feb. 27, 2008 | Motion |
| **37. Plaintiff's Reply in Support of Motion to Modify Protective Order** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger, and Michael Hoffmann, Defendants. 2007 WL 4612072 | PDF | E.D.Mich. | Nov. 27, 2007 | Motion |
| **38. Plaintiff's Reply to Individual Defendants' Response to MSC.software's Motion for Sanctions** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Todd McDevitt, Mark Krueger, and Michael Hoffmann, Defendants. 2007 WL 4612073 | PDF | E.D.Mich. | Nov. 27, 2007 | Motion |

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **39. Plaintiff's Reply to Defendant Altair's Response to Plaintiff's Motion to Compel and for Discovery Sanctions** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Todd McDevitt, Mark Krueger, and Michael Hoffmann, Defendants. 2007 WL 4612074 | | E.D.Mich. | Nov. 27, 2007 | Motion |
| **40. Defendants' Reply in Support of Their Motion to Compel Plaintiff MSC.software Corporation to Produce** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger, and Michael Hoffman, Defendants. 2007 WL 4612075 | | E.D.Mich. | Nov. 27, 2007 | Motion |
| **41. Motion by Defendant Michael Hoffmann to Dismiss all Claims Against Him or for More Definite Statement of Claims and Brief Supporting Motion** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger and Michael Hoffman, Defendants. 2007 WL 4612071 | | E.D.Mich. | Nov. 26, 2007 | Motion |
| **42. Brief in Opposition to Defendants' Motion to Compel MSC.Software Corporation to Produce Documents Before 30(b)(6) Deposition** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger, and Michael Hoffman, Defendants. 2007 WL 4612068 | | E.D.Mich. | Nov. 21, 2007 | Motion |
| **43. Defendant Altair Engineering, Inc.'s Response to Plaintiff MSC's Ý2¨ Motion to Compel and Ý1¨ Motion for Sanctions** MSC.SOFTWARE CORPORATION Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger, and Michael Hoffman, Defendants. 2007 WL 4612069 | | E.D.Mich. | Nov. 21, 2007 | Motion |
| **44. Individual Defendants' Response to Plaintiff's Motion for Sanctions** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger and Michael Hoffman, Defendants. 2007 WL 4612070 | | E.D.Mich. | Nov. 21, 2007 | Motion |

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **45. Defendants' Response to Plaintiff's Motion to Modify Protective Order** <br> MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger and Michael Hoffman, Defendants. <br> 2007 WL 4612067 | PDF | E.D.Mich. | Nov. 16, 2007 | Motion |
| **46. Motion by Defendants to Compel Plaintiff MSC.Software Corporation to Produce Requested Documents Before 30(b)(6) Deposition and Brief Supporting Motion** <br> MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger and Michael Hoffman, Defendants. <br> 2007 WL 4612066 | PDF | E.D.Mich. | Nov. 14, 2007 | Motion |
| **47. Defendant Altair Engineering, Inc.'s Emergency Motion to Compel Msc to Respond to Altair's Discovery Requests** <br> MSC SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger, and Michael Hoffmann, Defendants. <br> 2007 WL 4612065 | PDF | E.D.Mich. | Oct. 12, 2007 | Motion |
| **48. Reply to Response to Motion for Protective Order** <br> MSC SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger and Michael Hoffman, Defendants. <br> 2007 WL 4612064 | PDF | E.D.Mich. | Oct. 10, 2007 | Motion |
| **49. Plaintiff's Response to Defendants Rampalli and Krueger's Motion for Protective Order Adjourning Depositions** <br> MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Todd McDevitt, Mark Krueger, and Michael Hoffmann, Defendants. <br> 2007 WL 4612063 | PDF | E.D.Mich. | Oct. 09, 2007 | Motion |
| **50. Motion by Defendants Rajiv Rampalli and Mark Krueger's for Protective Order Adjourning Depositions** <br> MSC SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger and Michael Hoffman, Defendants. <br> 2007 WL 4612062 | PDF | E.D.Mich. | Oct. 03, 2007 | Motion |

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **51. Sur-Reply by Rajiv Rampalli to Motion to Compel** MSC SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger and Michael Hoffman, Defendants. 2007 WL 3089220 | PDF | E.D.Mich. | Sep. 06, 2007 | Motion |
| **52. Altair's Sur-Reply in Opposition to MSC's Emergency Motion to Compel Responses to Expedited Discovery Requests and Request for Sanctions Pursuant to Fed. R. Civ. P. 37** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger, and Michael Hoffman, Defendants. 2007 WL 3115810 | PDF | E.D.Mich. | Sep. 05, 2007 | Motion |
| **53. Plaintiff MSC's Brief in Reply to Defendant Rajiv Rampalli's Response to MSC's Emergency Motion to Compel Responses to Expedited Discovery Requests and Request for Sanctions Pursuant to Fed. R. Civ. P. 37** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger, and Michael Hoffmann, Defendants. 2007 WL 3115811 | PDF | E.D.Mich. | Sep. 05, 2007 | Motion |
| **54. Response by Rajiv Rampalli to Motion to Compel** MSC SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger and Michael Hoffman, Defendants. 2007 WL 3115809 | PDF | E.D.Mich. | Sep. 04, 2007 | Motion |
| **55. Plaintiff MSC's Brief in Reply to Altair's Response to MSC's Emergency Motion to Compel Responses to Expedited Discovery Requests and Request for Sanctions Pursuant to Fed. R. Civ. P. 37** MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger, and Michael Hoffmann, Defendants. 2007 WL 3115808 | PDF | E.D.Mich. | Aug. 31, 2007 | Motion |

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **56.** **Plaintiff MSC.Software Corporation's Emergency Motion to Compel Responses to Expedited Discovery Requests from Defendant Altair and Request for Sanctions Pursuant to Fed. R. Civ. P. 37**<br>MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd Mcdevitt, Mark Krueger, and Michael Hoffmann, Defendants.<br>2007 WL 3115806 | PDF | E.D.Mich. | Aug. 24, 2007 | Motion |
| **57.** **Plaintiff MSC.Software Corporation's Emergency Motion to Compel Responses to Expedited Discovery Requests from Defendant Rajiv Rampalli and Request for Sanctions Pursuant to Fed. R. Civ. P. 37**<br>MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger, and Michael Hoffmann, Defendants.<br>2007 WL 3115807 | PDF | E.D.Mich. | Aug. 24, 2007 | Motion |
| **58.** **MSC.Software Corporation's Reply to Defendants' Supplement to Its Brief in Opposition to Plaintiff's Motion for Expedited Discovery Pursuant to Fed. R. Civ. P. 26(d)**<br>MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd Mcdevitt, Mark Krueger, and Michael Hoffmann, Defendants.<br>2007 WL 3115805 | PDF | E.D.Mich. | July 23, 2007 | Motion |
| **59.** **Msc.Software Corporation's Reply to Defendants' Response to Plaintiff's Motion for Expedited Discovery Pursuant to Fed. R. Civ. P. 26(d)**<br>MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd McDevitt, Mark Krueger, and Michael Hoffmann, Defendants.<br>2007 WL 3089249 | PDF | E.D.Mich. | July 20, 2007 | Motion |
| **60.** **Defendants' Supplement to its Brief in Opposition to Plaintiff's Motion for Expedited Discovery Pursuant to Fed. R. Civ. P. 26(d)**<br>MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd Mcdevitt, Mark Krueger, and Michael Hoffman, Defendants.<br>2007 WL 3115804 | PDF | E.D.Mich. | July 20, 2007 | Motion |

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **61.  Defendants' Brief in Opposition to Plaintiff's Motion for Expedited Discovery Pursuant to Fed. R. Civ. P. 26(d)** <br> MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Todd Mcdevitt, Mark Krueger, and Michael Hoffman, Defendants. <br> 2007 WL 3115803 | PDF | E.D.Mich. | July 18, 2007 | Motion |
| **62.  Joint Status Report and Proposed Case Plan** <br> MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger, and Michael Hoffmann, Defendants. Altair Engineering, Inc., Counter-Plaintiff, v. MSC.Software Corporation, Counter-Defendant. <br> 2012 WL 6027812 | PDF | E.D.Mich. | Feb. 17, 2012 | Filing |
| **63.  Joint List of Matters Currently before the Court Submitted Pursuant to Section 11 of the Order of June 4, 2009 (Docket No. 300)** <br> MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger, and Michael Hoffman, Defendants. Altair Engineering, Inc., Counter-Plaintiff, v. MSC.Software Corporation, Counter-Defendant. <br> 2009 WL 2510077 | PDF | E.D.Mich. | June 10, 2009 | Filing |
| **64.  Joint List of Matters Not Currently before the Court Submitted Pursuant to Section 11 of the Order of June 4, 2009 (Docket No. 300)** <br> MSC.SOFTWARE CORPORATION, Plaintiff, v. ALTAIR ENGINEERING, INC., Marc Klinger, Andrea Pertosa, Stephan Koerner, Tom Riedeman, Rajiv Rampalli, Mark Krueger, and Michael Hoffman, Defendants. Altair Engineering, Inc., Counter-Plaintiff, v. MSC.Software Corporation, Counter-Defendant. <br> 2009 WL 2522198 | PDF | E.D.Mich. | June 10, 2009 | Filing |
| **65.  Judgment** <br> MSC SOFTWARE CORPORATION, Plaintiff(s), v. ALTAIR ENGINEERING, INC., Marc Klinger, Michael Hoffman, and Rajiv Rampalli, Defendant(s). <br> 2014 WL 2152551 | PDF | E.D.Mich. | Apr. 10, 2014 | Jury Verdict |
| **66.  Verdict** <br> MSC.SOFTWARE CORPORATION, v. ALTAIR ENGINEERING, INCORPORATED et al. <br> 2014 WL 2152728 | PDF | E.D.Mich. | Apr. 10, 2014 | Jury Verdict |
| **67.  Docket 2:07-CV-12807** <br> MSC.Software Corporation v. Altair Engineering, Incorporated et al | — | E.D.Mich. | July 05, 2007 | Docket |

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **68. Termination Agreement**<br>MSC.SOFTWARE CORPORATION, v. ALTAIR ENGINEERING, INCORPORATED et al.<br>2007 WL 7211547 | | E.D.Mich. | Nov. 26, 2007 | Exhibits |
| **69. Expert Resume of Linda Petzold**<br>Linda Petzold<br>2007 WL 6908468 | | E.D.Mich. | 2007 | Expert Resume |

**History (49)**

**Direct History (2)**

1. MSC Software Corporation v. Altair Engineering, Inc.
   2015 WL 13273227 , E.D.Mich. , Nov. 09, 2015

*Supplemented by*

2. MSC Software Corporation v. Altair Engineering, Inc.
   2015 WL 13359781 , E.D.Mich. , Nov. 22, 2015

**Related References (47)**

3. MSC Software Corp. v. Altair Engineering, Inc.
   2008 WL 2397658 , E.D.Mich. , June 10, 2008

*Objections Overruled by*

4. MSC.Software Corp. v. Altair Engineering, Inc.
   2010 WL 431699 , E.D.Mich. , Feb. 02, 2010

*On Reconsideration*

5. MSC.Software Corp. v. Altair Engineering, Inc.
   2010 WL 2696749 , E.D.Mich. , July 07, 2010

6. MSC Software Corp. v. Altair Engineering, Inc.
   2008 WL 4940361 , E.D.Mich. , Sep. 09, 2008

*Report and Recommendation Adopted in Part by*

7. MSC.Software Corp. v. Altair Engineering, Inc.
   2008 WL 4940362 , E.D.Mich. , Nov. 13, 2008

*Order Clarified by*

8. MSC.Software Corp. v. Altair Engineering, Inc.
   2008 WL 5263826 , E.D.Mich. , Dec. 18, 2008

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

🚩 9.  MSC Software Corp. v. Altair Engineering, Inc.
2008 WL 4940361 , E.D.Mich. , Sep. 09, 2008


*Opinion Withdrawn in Part by*


🏳 10.  MSC.Software Corp. v. Altair Engineering, Inc.
2010 WL 431699 , E.D.Mich. , Feb. 02, 2010


*On Reconsideration*


11.  MSC.Software Corp. v. Altair Engineering, Inc.
2010 WL 2696749 , E.D.Mich. , July 07, 2010


12.  MSC.software Corp. v. Altair Engineering, Inc.
2008 WL 2478313 , E.D.Mich. , June 17, 2008


13.  MSC.Software Corp. v. Altair Engineering, Inc.
2008 WL 2670189 , E.D.Mich. , June 27, 2008


14.  MSC.Software Corp. v. Altair Engineering, Inc.
2008 WL 5381864 , E.D.Mich. , Dec. 22, 2008


15.  MSC.Software Corp. v. Altair Engineering, Inc.
2009 WL 37333 , E.D.Mich. , Jan. 07, 2009


16.  MSC Software Corp. v. Altair Engineering, Inc.
2009 WL 10673365 , E.D.Mich. , Feb. 02, 2009


17.  MSC.Software Corp. v. Altair Engineering, Inc.
2009 WL 275722 , E.D.Mich. , Feb. 05, 2009


18.  MSC.Software Corp. v. Altair Engineering, Inc.
2009 WL 365491 , E.D.Mich. , Feb. 06, 2009


19.  MSC.Software Corp. v. Altair Engineering, Inc.
2009 WL 426556 , E.D.Mich. , Feb. 19, 2009

20.  MSC Software Corp. v. Altair Engineering, Inc.
2009 WL 10676048 , E.D.Mich. , Mar. 02, 2009


21.  Msc.Software, Inc. v. Altair Engineering, Inc.
2009 WL 1856222 , E.D.Mich. , June 25, 2009


22.  MSC.Software Corp. v. Altair Engineering, Inc.
2009 WL 2843907 , E.D.Mich. , Aug. 27, 2009


Reconsideration Denied by

23.  MSC.Software Corp. v. Altair Engineering, Inc.
2009 WL 3029650 , E.D.Mich. , Sep. 16, 2009


24.  MSC Software Corp. v. Altair Engineering, Inc.
2009 WL 3921251 , E.D.Mich. , Sep. 02, 2009


Report and Recommendation Adopted by

25.  MSC.Software Corp. v. Altair Engineering, Inc.
2009 WL 4726588 , E.D.Mich. , Nov. 30, 2009


26.  MSC.Software Corp. v. Altair Engineering, Inc.
2009 WL 2905560 , E.D.Mich. , Sep. 04, 2009


27.  MSC.Software Corp. v. Altair Engineering, Inc.
2009 WL 2923075 , E.D.Mich. , Sep. 10, 2009


28.  MSC Software Corp. v. Altair Engineering, Inc.
2009 WL 10675935 , E.D.Mich. , Sep. 30, 2009


29.  MSC.Software Corp. v. Altair Engineering, Inc.
2009 WL 3300028 , E.D.Mich. , Oct. 14, 2009

30. MSC.software Corp. v. Altair Engineering, Inc.
2009 WL 3388624 , E.D.Mich. , Oct. 16, 2009

31. MSC.Software Corp. v. Altair Engineering, Inc.
2009 WL 3831897 , E.D.Mich. , Nov. 16, 2009

32. MSC Software Corp. v. Altair Engineering, Inc.
2010 WL 8575055 , E.D.Mich. , Jan. 11, 2010

*Report and Recommendation Adopted by*

🚩 33. MSC.Software Corp. v. Altair Engineering, Inc.
2012 WL 1340445 , E.D.Mich. , Apr. 18, 2012

34. MSC Software Corp. v. Altair Engineering, Inc.
2010 WL 2740134 , E.D.Mich. , June 10, 2010

35. MSC.Software Corp. v. Altair Engineering, Inc.
2010 WL 2696752 , E.D.Mich. , July 07, 2010

36. MSC.Software Corp. v. Altair Engineering, Inc.
2012 WL 3224130 , E.D.Mich. , Aug. 06, 2012

37. MSC.software v. Altair Engineering, Inc.
2012 WL 12973131 , E.D.Mich. , Nov. 16, 2012

38. MSC.Software Corporation v. Altair Engineering, Inc.
2013 WL 12218260 , E.D.Mich. , Jan. 31, 2013

39. MSC.Software Corp. v. Altair Engineering, Inc.
2014 WL 4740917 , E.D.Mich. , Sep. 23, 2014

40. MCS.Software Corp. v. Altair Engineering, Inc.
2014 WL 4966022 , E.D.Mich. , Oct. 02, 2014

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

41. MSC.Software Corp. v. Altair Engineering, Inc.
2014 WL 6485492 , E.D.Mich. , Nov. 13, 2014

42. MSC Software Corporation v. Altair Engineering, Inc.
2015 WL 13715590 , E.D.Mich. , Sep. 22, 2015

43. MSC.Software Corporation v. Altair Engineering, Inc.
2016 WL 1714873 , E.D.Mich. , Jan. 07, 2016

44. MSC.Software Corporation v. Altair Engineering, Inc.
2016 WL 4087231 , E.D.Mich. , Aug. 02, 2016

*Reconsideration Denied by*

45. MSC. Software Corporation v. Altair Engineering, Inc.
2016 WL 6677936 , E.D.Mich. , Nov. 14, 2016

46. MSC.Software Corporation v. Altair Engineering, Inc.
2017 WL 2715220 , E.D.Mich. , Feb. 13, 2017

47. MSC.Software Corporation v. Altair Engineering, Inc.
2017 WL 562803 , E.D.Mich. , Feb. 13, 2017

48. MSC.Software Corporation v. Altair Engineering, Inc.
281 F.Supp.3d 660 , E.D.Mich. , Dec. 13, 2017

*Appeal Dismissed by*

49. MSC.Software Corporation v. Altair Engineering, Incorporated
2018 WL 6986635 , 6th Cir. , Aug. 29, 2018